# CHARLESTON

| 60 | 75 |
| 61 | 481 |
| 61 | 482 |
| 61 | 631 |

## POLLOCK et al. v. BROOKOVER.

Submitted January 23, 1906.      Decided February 20, 1906.

1. SPECIFIC PERFORMANCE—*Option Contract.*

   Where an option has been given upon land, which has not been converted into a binding contract by acceptance in accordance with its provisions, specific performance thereof cannot be enforced. (p. 78.)

2. SAME—*Acceptance of Option—Executory Contract.*

   An option given for the sale of land, supported by a valuable consideration, is not a sale of real estate, nor an agreement to sell, but is an executed contract, giving the optionee the exclusive privilege of purchasing within the time limited, and which cannot be withdrawn during the time stipulated for; and upon acceptance within that time, it becomes an executory contract for the sale of land, which may be specifically enforced in a proper case. (p. 78.)

3. VENDOR AND PURCHASER—*Option Contract—Conditions Precedent.*

Where the owner gives to another an option to purchase the coal underlying certain land, in which it is provided that unless the optionee accept the same and pay one-third of the purchase money within a stipulated time, that the option shall be null and void, and the parties mutually released therefrom, it is a condition precedent to the consummation of an executory contract of sale between the parties, that the option be accepted and the money paid within the time limited. (p. 79.)

Appeal from Circuit Court, Wetzel County.

Bill by J. B. Pollock and others against Jacob Brookover. Judgment for plaintiffs, and defendant appeals.

*Reversed.*

E. B. SNODGRASS and E. L. ROBINSON, for appellant.
THOS. P. JACOBS and A. D. WILLIAMS, for appellees.

SANDERS, JUDGE:

The defendant, Jacob Brookover. being the owner of a tract of one hundred and fifty acres of land, in Wetzel county, on the 15th day of November, 1899, he and his wife gave to the plaintiff, J. B. Pollock, the following optional contract:

"Article of Agreement, made and entered into this fifteenth day of November, A. D., 1899, between Jacob Brookover and Elizabeth Brookover, of Anthem, Wetzel Co.,W.Va., of the first part, and J.B.Pollock, of Waynesburg,Pa., of the second part, witnesseth, that the said parties of the first part, for the consideration of One Dollars, and for the further consideration hereinafter mentioned, do hereby agree to sell and convey unto the said party of the second part, his heirs and assigns, all the coal of the Pittsburg or River vein in and under all that certain tract of land situate in Township of Centre, County of Wetzel, State of W. Va., and bounded and described as follows, viz.: North by lands of Samuel Hudson; East by lands of Samuel Thomas & C. Brookover; South by lands of Enoch Roberts; West by lands of C. Brookover and Z. T. Stewart, containing one hundred and fifty (150) acres, together with the free and uninterrupted right of way into, upon and under said land at such points and in such manner as may be proper and necessary for the purpose of digging, mining, coking and carrying away said coal, hereby waiving

all damages arising therefrom or thereon from the removal of all the said coal; together with the privilege of mining and removing through said described premises, other coal belonging to said party of the second part, his heirs or assigns, or which may hereafter be acquired and the said parties of the second part do hereby covenant and agree that they shall and will, on the payment of the purchase money as hereinafter provided, well and sufficiently, by lawful deed of general warranty, convey the above described coal unto the said party of the second part, his heirs and assigns, forever. In consideration whereof, the said party of the second part, hereby agree to pay, or cause to be paid, unto the said parties of the first part, the sum of seven dollars per acre, one-third of the purchase money to be paid as soon as convenient to have title examined, survey made, deed prepared, etc., after sale is made, so as to take no unnecessary time; (the parties of the first part to furnish complete abstract of title,) and the remainder to be paid in one and two years thereafter, with interest from date of first payment; deferred payments to be secured by the bond and mortgage of the purchaser, on the coal sold; and it is further agreed by the parties hereto that the party of the second part shall have the option of taking said coal according to the stipulations of the above agreement until the first day of January, A. D. 1901. And on the payment of the purchase money at any time before said first day of January, A. D. 1901, he shall be entitled to a deed as hereinbefore provided. And in case the said party of the second part shall fail to pay the purchase money on or before the said first day of January, A. D. 1901, or elect not to take the same, then this agreement shall be null and void, and the parties hereto shall be mutually released therefrom. The said party of the second part further agrees that if any surface land be used he will pay or cause to be paid unto the said first parties one hundred and fifty dollars per acre for as much as is used. First party reserves the right to drill through said coal for oil and gas. Parties of first part reserve ten acres of surface around buildings. In witness whereof we have hereunto set our hands and seals the day and year first above written. Jacob Brookover, (seal.) Elizabeth Brookover, (seal) Attest: Maggie Brookover.''

While the option was taken in the name of Pollock, yet it appears that it was for the benefit of him and R. W. Munnell, who were partners doing business under the firm name of Robert W. Munnell & Co. On the 28th day of December, 1900, Robert W. Munnell & Co. notified the defendant, Brookover, that they would elect to take and purchase the coal underlying the land described in the option, subject to the terms and conditions therein contained. After having given said notice of acceptance, and on the 26th day of February, 1901, Robert W. Munnell & Co, and J. B. Pollock assigned their interest in said option to Samuel S. Patterson and Owen R. Brownfield, and some time thereafter the assignees of the option, through their agent, A. D. Williams, demanded a conveyance of the property embraced in the option, which Brookover declined to make, and thereupon the plaintiffs, J. B. Pollock, Robert W. Munnell, Samuel S. Patterson and Owen R. Brownfield, filed a bill in equity against Jacob Brookover, praying for the specific performance of the contract. The defendant answered, denying the right of the plaintiffs to have specific performance, and upon a final hearing, the circuit court granted the relief prayed for in plaintiff's bill, and directed a conveyance of the property to Samuel S. Patterson, one of the plaintiffs, Brownfield having assigned to him his interest, during the pendency of the suit, and it is from this decree that the defendant has applied for and obtained an appeal and *supersedeas.*

The relief sought being the specific execution of a contract, it is important to determine the true character of the writing sought to be enforced, as it forms the basis of the plaintiff's suit. A writing of this character, based upon a valid consideration, falls within one of the various classes of an unilateral contract. It is not a contract to sell, nor an agreement to sell, real estate, because there is no mutuality of obligation and remedy, but it is a contract by which the owner agrees with another person that he shall have the right to buy, within a certain time, at a stipulated price. It is a continuing offer to sell, which may, or may not, within the time specified, at the election of the optionee, be accepted. The owner parts with his right to sell to another for such time, and gives to the optionee this exclusive priv-

ilege.   It is the right of election to purchase, which has been bought and paid for, and which forms the basis of the contract between the parties.   Upon the payment of the consideration, and the signing of the option, it becomes an executed contract—not, however, an executed contract selling the land, but the sale of the option, which is irrevocable by the optionor, and which is capable of being converted into a valid executory contract for the sale of land' by the tender of the purchase money, or his performance of its conditions, whatever they may be, within the time to which such offer has been limited.   When such option is thus accepted, it becomes an executory contract for the sale of the land, with mutuality of obligation and remedy.   *Rease* v. *Kittle*, 56 W. Va. 269; *Ide* v. *Leiser*, 5 Mont. 5; *Gordon* v. *Darnell*, 5 Col. 304; *De Rutte* v. *Muldrow*, 16 Cal. 505; *Goodpaster* v. *Porter*, 11 Ia. 161; *Woodruff* v. *Woodruff*, 44 N. J. Eq. 349; *Perkins* v. *Hadsell*, 50 Ill. 216; *Warren* v. *Costello*, 109 Mo. 338; 32 Am. St. Rep., 669; *Corson* v. *Mulvany*, 49 Pa. St. 88; 88 Am. Dec. 485.

The offer must have been fully and completely accepted, in all its parts, and its provisions strictly complied with, before it became an executory contract.   It is the complete acceptance of the option, by complying with all its provisions in that respect, that concludes the contract between the parties.

The plaintiffs, Robert W. Munnell & Co. on the 28th day of December, 1900, just three days before the expiration of the option, gave notice to Brookover that they would elect to purchase the land, subject to its terms and conditions. But, at this time, no part of the purchase money was paid or tendered, nor was the same, or any part thereof, paid or tendered at any time prior to the first day of January, 1901. The plaintiffs claim that, upon acceptance of the option, it was converted into an executory contract. and that the delivery of the deed and payment of the purchase money were to be simultaneous acts, after abstract of title was furnished, and a convenient time given within which to examine title, and have survey made.   To thus construe the option would be to entirely ignore certain express, essential parts thereof, and thereby violate all the fixed rules of construction.

Where a contract is uncertain as to its meaning, and does not definitely and clearly express the intention of the parties, it must be construed by taking all of its parts together, and giving to each provision due force. The real intent of the optionor must be gathered from the writing, and in order to do so, we cannot be controlled by any particular stipulation or part, but must gather his intention from the entire instrument, and, when this writing is thus construed, we are forced to conclude that the offer to sell was, by the very terms of the contract, limited to the first day of January, 1901. At any time before the date specified for its expiration, the plaintiffs were entitled to accept the offer, but, in doing so, the acceptance should be strictly in accordance with its express provisions; and unless this was done, and done within the time specified, it never became a concluded contract. It was not only necessary for the plaintiffs to give notice of the acceptance of the option, but from its very language, it was also one of its express requirements that one-third of the purchase money should be paid, before the time fixed for its conclusion had passed. While it provides that the optionor, upon payment of one-third of the purchase money, would make a deed for the property, and while. also, it is provided that "one-third of the purchase money to be paid as soon as convenient to have title examined, survey made, deed prepared, etc., after sale is made, so as to take no unnecessary time; (the parties of the first part to furnish complete abstract of title,)" yet these provisions must be construed in the light of the other provisions which follow, one of which is: "Party of the second part shall have the option of taking said coal according to the stipulations of the above agreement until the first day of January, A. D. 1901," and the other, "And in case the said party of the second part should fail to pay the purchase money on or before the first day of January, A. D. 1901, or elect not to take the same, then this agreement shall be null and void, and the parties hereto shall be mutually released therefrom."

When these provisions are taken and read together, it would seem that it was the intention of the optionor that the offer should extend only for the period named. and that unless accepted by proper notice and the payment

of one-third of the purchase money, it thereby became terminated.

The provisions giving the optionee until a specified time within which to take the coal, and providing for the payment of the purchase money on or before a certain date, are clear and unmistakable, and are entitled to force. To construe them to mean that the right to accept the coal and pay the purchase money extended beyond the first day of January, would be to absolutely disregard the express language and true meaning of the writing. It is true the contract provides that the money was to be paid as soon as convenient to have title examined, survey made and deed prepared, and that the optionor was to furnish a complete abstract of title, but it cannot be gathered from this language, read in connection with the other parts of the contract, that it was ever the intention of the owner to extend the time beyond the first day of January, and to so construe it would be to render meaningless other pointed and express provisions thereof. If the writing can be so construed as to give meaning to each part, it should be done. The optionee knew that by express provision of the option his right to accept it was limited to a certain time, and if he desired an abstract of title, and deed, upon paying the cash payment, it became his duty to give notice of his intention to accept a sufficient time before its expiration to enable the optionor to furnish such abstract and deed, and by not doing so he cannot extend the time for the payment of the purchase money, which it was essential should be paid within a certain time. The optionee, knowing that the offer expired by limitation on a certain day, if not accepted, cannot stand by and wait till the time passes, or within three days of its expiration, and then say that the time should be extended to enable him to examine title, and have abstract and deed prepared, and thereby defeat the very object of the contract. But in doing so he will be regarded as having waived his right to demand abstract and deed upon payment of the purchase money. If notice of acceptance had been given a sufficient time before the expiration of the option, to enable the optionor to furnish abstract and deed, then we think he would have been required to do so before being entitled to demand any part of the purchase money.

Notice was not given until three days before the date for its expiration, and, when given, no demand was made for abstract, no deed was demanded, and no part of the purchase money tendered, but the optionee contented himself with having the owner to accept the notice, then left, and was not heard of until April or May, 1901, long after the time for the payment of the money had expired, and after the owner had optioned the land for a much higher price—property, in the meantime, having probably more than doubled in value.

Brookover lived about twenty-five miles from the county seat of his county, and the testimony abundantly shows, if we could not presume, that the time between the giving of the notice of acceptance and the first day of January, was altogether inadequate for the purpose of furnishing abstract and deed. It is said that Pollock had every day till the first day of January to accept. So he did, but he did not have the right to demand abstract and deed if he waited till the time had so nearly expired that it was impossible for the optionor to furnish them. And if he so delayed without accepting, he must pay without them, or lose his right to accept.

Plaintiff's counsel contend that this case is controlled by *Gas Co.* v. *Elder*, 54 W. Va. 535. Upon examination of that case, it will be found that it is clearly at variance with the case at bar. In that case there was an agreement to sell, and the owner accepted part consideration, and there the agreement did not expressly provide that the purchaser's right to buy expired on a given date, and that unless it was concluded by acceptance and the payment of the purchase money, that it should be void; but, on the other hand, it provided that if the first payment was made within a certain time, or as soon thereafter as the title should be examined and accepted by the purchaser, that then the agreement should be considered as rescinded, and neither party bound by it. Here it is true it fixes a time certain for the payment of the purchase money, but it is added that unless it is paid at that time, or as soon thereafter as the title shall have been examined, etc., the contract should be considered as rescinded; so, at a glance, it will be seen that

these cases are clearly distinguishable, and bear no relation whatever to each other.

The plaintiffs claim that time is not of the essence of the contract, and that the provision of the option for the payment of the purchase money was simply to enforce punctuality, and a failure by default of the vendee alone is usually disregarded in equity, and a subsequent payment, with interest, is treated as a sufficient compensation for delay. While the general rule is that in contracts for the sale of land, time is not of the essence of the contract, yet it may be made so by the express stipulations of parties, or it may arise by implication, from the very nature of the transaction. At one time it was the equitable doctrine that the parties could not make time so material as to become of the essence of the contract, but long ago this doctrine was abrogated, and it is now well established that this can be done. The optionor, by the express language of the option, made time of the essence of the contract. If payment not made within a certain time, the option to be void. Here we have only an offer to sell, to stand only for a definite period, and which was never accepted. The offer ceased when not accepted within the stated time. No right of acceptance existed after the first day of January. This was a part of, and included in, the proposition to sell. It was nothing but a proposition of sale upon one side, with the privilege of acceptance upon the other. And, from the very nature and terms of the offer, it was essential that it be accepted before the right to do so had expired by lapse of time. Pomeroy's Specific Performance, section 387, says, "Where the contract is really an offer on one side, with a provision that this offer must be assented to and accepted, when a mere acceptance is contemplated, or payment must be made, when payment was the act of acceptance contemplated, at or before a specified date, then, of course, the act of assent or of payment must be done within the prescribed time, and time is from the very nature of the contract essential. If, therefore, a vendor agree to convey, if payment be made at or before a given date, or if an option is given which is to be accepted by payment within a given time, then the time of the payment is certainly essential; in fact, payment is a condition precedent to the vesting of any right

in the vendee." *Brooke* v. *Garred*, 2 D. & J. 62; *Austin* v. *Tawney*, L. R. 2 Ch. 143; *Potts* v. *Whitehead*, 5 C. E. Green 55; *Magoffin* v. *Holt*, 1 Duvall (Ky.) 95; *Harding* v. *Gibbs*, 125 Ill. 85; 8 Am. St. Rep. 345.

It is presented that Brookover, by his conduct and acquiesence in the interpretation put upon the option by plaintiffs, showed that he gave it the same construction. There is a conflict in the evidence as to what Brookover said when approached with reference to this matter, after the option had expired. He claims that he then asserted that the option had expired, and that he had optioned the property to another person, while, upon the other hand, it is claimed that he said he was not being paid enough for his property; and it is also said that he employed A. D. Williams to assist in curing certain defects in his title, and that he co-operated with him in doing this work. It is certainly unimportant as to what conclusion should be reached with reference to the conflicting evidence, but conceding the facts to be as claimed by plaintiff, it would not have the effect of bringing into life the option, which had expired by limitation.

For the foregoing reasons, we reverse the decree of the circuit court, and dismiss the bill.

*Reversed.*