# CHARLESTON

FULTON *v.* MESSENGER *et al.*

Submitted June 7, 1906. Decided March 5, 1907.

1. VENDOR AND PURCHASER—*Requisites of Contract—Option—Acceptance.*

   An option is a continuing offer upon the part of the optionor to sell, and when limited to a certain time, it is essential that it should be accepted within such time by a compliance with its terms upon the part of the optionee, and if not accepted within such time, the right to do so is lost   (p. 479.)

2. SAME—*Waiver of Conditions.*

   Compliance by the optionee with the terms of an option may be waived by the optionor, and where an option provides that it is to be accepted within a stipulated time, and the optionee within such time gives notice that he will accept it and comply with its terms, such compliance is waived if in a written acceptance of such notice it is stipulated that the optionor agrees to convey the property and gives additional time in which to make a survey and abstract of title.   (p. 480.)

3. SAME—*Option—Assignment.*

   Where an option, supported by a valuable consideration, is given to one and his assigns, the same may be assigned, and the assignee will be invested with all the rights of the original optionee.   (p. 483.)

4.  CONTRACTS—*Validity—Reality of Assent.*

It is the duty of one signing a contract or writing to acquaint himself with its contents, and if he does not do so, he cannot be relieved against the consequences arising from the act of signing, unless his signature is obtained by fraud.   (p. 484.)

5   APPEAL—*Presentation of Questions in Lower Court—Exceptions—Necessity.*

Exceptions to depositions should be called to the attention of the lower court and passed upon, and unless this is done, upon appeal they will be treated as waived.   (p. 485.)

6.  JUDGES—*Special Judge—Election—Notice.*

Notice is only required of the election of a special judge to attorneys of record in certain pending cases, where the regular judge of the court is present and it is improper for him to preside at the trial thereof, and he enters an order directing the election of such special judge.   Where the regular judge of the court fails to attend and hold the term or to complete the same when begun, and a special judge is elected to hold the term, no notice of his election is required.   (p. 485.)

7.  EQUITY—*Decree— Vacation—Grounds— Want of Parties.*

Where, at the time of entering a final decree, there is nothing in the record to show a lack of proper parties to the suit, such fact cannot afterwards be made to appear, the correctness of the decree being determined by the record as it was at the time it was pronounced.   (p: 487.)

8.  SAME—*Procedure Notice.*

Where, in a suit in equity, there has been a final decree, such decree cannot be set aside upon notice, the proper remedy being by bill of review, or an original bill may be filed to impeach such decree.   (p. 487.)

Appeal from Circuit Court, Gilmer County.

Action by E. D. Fulton against John Messenger and others. From a decree in favor of plaintiff, defendants John Messenger and another appeal.

*Affirmed.*

SHOWALTER & WHITE and C. POWELL, for appellants.

R. G. LINN and R. F. KIDD, for appellees.

SANDERS, PRESIDENT:

This is an appeal from and *supersedeas* to a decree of the circuit court of Gilmer county, prosecuted by John Messenger and the Stewart's Creek Coal Company, the decree being entered in a cause in which E. D. Fulton was plaintiff and John Messenger and others were defendants.

On January 21, 1901, by a contract in writing, John Messenger and wife, in consideration of the sum of ten dollars per acre, of which one dollar was paid, optioned to L. H. Barnett or his assigns three hundred and fifty acres of land, more or less, to be surveyed at the expense of Barnett, and the optionors agreed to convey same to the optionee or his assigns, by deed of general warranty, "at any time before the 21st day of July, 1901," when required by the optionee, and deposit same in the Gilmer County Bank, at Glenville, to be delivered to the optionee, or to whom he might direct, when he had complied with the agreement upon his part by depositing to the credit of the optionors one-third of the purchase money in cash, and two notes of equal amounts for the deferred payments. It was further provided that the contract should be void in case the optionee failed to comply therewith in six months. The following agreement was later endorsed on this contract: "For value received, I hereby assign all my right, title and interest in and to the within option to William Crennell, Jr., this 3rd day of July, 1901. L. H. Barnett." On the 19th day of July, 1901, the following notice was served on Messenger: . "To John Messenger: In accordance with an agreement executed by you on the 21st day of January, 1901, to L. H. Barnett whereby you agreed to sell and convey to him or assigns all the merchantable coal underlying certain land in the county of Gilmer, state of West Virginia, estimated at 350 acres of coal, more or less, to be surveyed and actual number of acres of coal ascertained, to be paid for at the price fixed in said agreement, and deed to be made to the said L. H. Barnett or assigns of general warranty in fee simple and clear of encumbrances. You will take notice that the undersigned will carry out said agreement on his part, as assignee of the said L. H. Barnett, by payment of money and delivery of notes; and will require the deed as provided in said contract, and its terms complied with on the part of all the parties thereto. July the 3rd, 1901. Wm. Crennell, Jr." This notice has the following endorsement thereon: "I hereby accept service of the within notice and agree to make and deliver deed when the within named land can be surveyed by O. H. P. Lewis and proper abstract of title is complete, for said work I agree to give sufficient time to have same done. This 19th of July, 1901. John Messenger."

Some time later in the year 1901 Crennell assigned the contract to E. D. Fulton. On the 8th day of January, 1902, Messenger entered into a contract of sale with C. W. Swisher for the coal in question, and Messenger, by virtue of said contract, on the 23rd day of October, 1902, conveyed the same to the Stewart's Creek Coal Company.

On the 30th day of January, 1902, Fulton tendered to Messenger a check for the cash payment and note to secure the deferred payment on the property, and upon Messenger's refusal to accept same, suit was brought to compel specific performance of the agreement. Later an amended bill was filed, in which the conveyance by Messenger to Stewart's Creek Coal Company was set up, and the deed asked to be canceled. Upon a final hearing, before a special judge, the plaintiff was decreed the relief prayed for. At a subsequent term, a motion was made to set aside this decree, on the ground that the special judge was not properly selected, and also that the cause had been submitted and decided in the absence of counsel for the defendants, which motion was overruled, and the cause is now here for review.

The appellants assign many reasons why the decree of the circuit court should be reversed and the plaintiff denied relief, but in dealing with them we come first to the consideration of the demurrer to the original and amended bills, the disposition of which determines the vital question upon which this litigation hinges, and that question is, does the optional contract, the assignment thereof by Barnett to Crennell, the written notice of acceptance thereof by Crennell, and the requirement by him of Messenger to execute the deed, and the written acceptance of the notice and the agreement endorsed thereon signed by Messenger, constitute a binding executory contract of sale, which can be enforced by Fulton, the assignee of Crennell. There is no difficulty in determining that the option given by Messenger to Barnett to purchase within a certain time at a stipulated sum, is a binding and enforceable contract. It is not an executory contract for the sale of the coal, but it is an executed contract, giving the right to the optionee, by his complying with its provisions within a limited time, to convert it into a valid and binding executory contract. When the optionee has fully complied with its provisions within the time limited, it then becomes an en-

forceable executory contract, with mutual rights and obligations. It no longer lacks mutuality. The sale of the property is then complete, investing the contracting parties respectively with the right to compel performance. It being, however, only a continuing offer upon the part of the optionor to sell, limited to a certain time, and not being a contract of sale, it is essential that it should be accepted within the time specified, by the optionee, or his assignee, if assignable, complying with its terms, and if not so accepted within that time, the right to do so is lost. *Pollock* v. *Brookover*, 60 W. Va. 75, (53 S. E. 795); *Reuse* v. *Kittle*, 56 W. Va. 269; *Weaver* v. *Burr*, 31 W. Va. 736; *Hanley* v. *Watterson*, 39 W. Va. 214; *Donnally* v. *Parker*, 5 W. Va. 301; *Longfellow* v. *Moore*, 102 Ill. 289; *Mason* v. *Payne*, 47 Mo. 517; *Carter* v. *Philips*, 144 Mass. 100; *Kemp* v. *Humphreys*, 13 Ill. 573; Warvelle on Vendors, (2nd Ed.) section 125.

The optionee or his assignee had until the 21st day of July, 1901, within which to require Messenger to convey the property, and deposit the deed of conveyance in the Gilmer County Bank, which was, by the express terms of the contract, to be delivered to the vendee upon his compliance with his part of the agreement by depositing to the credit of Messenger the cash payment and interest bearing notes for the deferred installments of purchase money. It does not appear that the cash payment and notes were so deposited within that time, but Wm. Crennell, to whom the option had been assigned, gave to Messenger the notice of acceptance hereinbefore set out, from which it will be observed that Crennell obligated himself to carry out and perform, as assignee of Barnett, the optional agreement, by paying the money and making the notes, and in the same writing Messenger was required to make the deed. Upon Messenger receiving this notice, by an express provision of the contract or option, it became his duty to make the deed and deposit it in said bank, to be delivered to the optionee or his assigns, upon his complying with his part of the contract. The contract made it the duty of Barnett to require a deed a sufficient time before the 21st of July, 1901, for the optionor to make the same and deposit it by that date, so that the cash payment and the notes could be deposited, and the sale consummated within the six months, because the contract expressly provides that un-

31

less complied with by the optionee within that time, it shall be void. The deed was not made and deposited as required in the contract, although on the 19th day of July, by the written notice referred to, it was required to be done, but instead of making the deed as required, Messenger accepted service of the notice, and as will be seen from the endorsement thereon, agreed to make and deliver the deed when the land could be surveyed by O. H. P. Lewis and proper abstract of title completed, and agreed to give sufficient time to have same done. Messenger could have stood upon the option, and demanded strict performance, by making the deed and depositing it in the bank as required, and if he had done so, it would then have become the duty of the optionee or his assignee to have complied with the provisions of the contract by depositing the money and the notes, else at the expiration of six months it would have become ineffectual. But instead of standing upon this contract, by making the deed as required, he expressly agreed to do so at a later date, and gave time for the survey and abstract of title to be made. Therefore, upon Crennell giving notice that he accepted the option, and demanding the deed, as provided by the contract, and Messenger accepting the notice and agreeing to make the deed, it became a binding executory contract, with mutual rights and obligations, enforceable at the suit of either party. It is argued that there was no consideration for the extension of the option, but it must be remembered that this endorsement by Messenger was not an extension of the option, but the conversion of it into a contract of sale, which was supported by a valuable consideration, the optionee to get the coal and to pay therefor to Messenger a stipulated sum, that sum being the amount named in the original option. *Pollock* v. *Brookover*, 60 W. Va. 75, (53 S. E. 795); *Watson* v. *Coast*, 35 W. Va. 463; *Johnson* v. *Trippe*, 33 Fed. 530; *Smith's Appeal*, 69 Pa. St. 474; *Wilcox* v. *Cline*, 70 Mich. 517; *Bradford* v. *Foster*, 87 Tenn. 4.

- The appellants contend that by the allegations of the plaintiff's bill he bases his right to recover solely upon the original option, with its assignment and notice of acceptance. The bill sets up the option, the assignment, the notice of acceptance by Crennell, the assignee, and the acceptance and agreement of Messenger, and asks for the enforcement of the

contract thereby created. They must be construed together, as they are connected one with the other, and form one entire agreement. When this is done; we have a complete con‑ tract. Every element of contract is present, parties, sub‑ ject-matter, consideration, meeting of minds, and mutuality of remedy and obligation.

It is insisted that an option is not assignable, and *Dyer* v. *Duffy*, 39 W. Va. 148, and *Rease* v. *Kittle*, *supra*, are cited in support of this proposition. Neither of these cases are analogous to the case at bar. The contracts there involved did not provide for an assignment, while the contract under consideration expressly provides for a sale and conveyance to Barnett or his assignee. In *Rease* v. *Kittle*, *supra*, it was held that where an offer is made to a particular person, and not to a party and his assigns, it could be accepted and en‑ forced by the optionee alone, but this Court did not hold that where an option is made to one and his assigns that it is not assignable, but this question was expressly left open. In *Dyer* v. *Duffy*, *supra*, the contract was limited to a single person, and not to the party and his assigns. Therefore, neither of these cases can be applied here. An optional con‑ tract, giving the right to purchase property within a certain time, and upon certain conditions, is often a valuable right, ·but under the authorities above cited, it is a personal privi‑ lege, limited to the optionee, where there is no provision for its assignment. But where the parties have expressly stipu‑ lated for an assignment, it is difficult indeed to find a reason why this may not be done. It cannot be longer said to be personal to the optionee, because by the express terms of the contract, the optionor has agreed to sell and convey to the op‑ tionee or his assigns. *Kerr* v. *Day*, 14 Pa. St. 112; *Napier* v. *Darlington*, 70 Pa. St. 64; *Bank* v. *Haumeister*, 87 Ky. 6; *Laflin* v. *Naglee*, 9 Cal. 662; 70 Am. Dec. 678; *House* v. *Jackson*, 24 Ore. 89; *Sutherland* v. *Parkins*, 57 Ill. 338.

Where an option is given to one and his assignees, we think the correct rule is that it is assignable. But were the rule otherwise, in this case the option not only provides that the conveyance shall be made to Barnett and his assigns, but after the assignment to Crennell and upon Crennell's giving notice to Messenger that he would accept the option and be bound by its terms, Messenger assented to the assignment

by his acceptance of this notice and his agreement to execute the deed and give time for the making of the survey and the abstract of title. Therefore, this is an additional reason why the contract can now be enforced by Crennell or his assignee. Of course, the assignment from Barnett to Crennell being enforceable, and the acceptance and agreement by Messenger forming a valid enforceable contract, thereby vesting in Crennell the equitable estate in the land, there can be no question as to his right to transfer his interest in the property to the plaintiff, Fulton. Other reasons are assigned why the demurrer should have been sustained, but upon an examination of the bill, we find that it contains all the necessary allegations for the specific performance of the contract. The property was surveyed shortly after the contract was consummated, and the cash payment and note executed for the deferred payment, were tendered, and the plaintiff avers his willingness and readiness to execute the contract upon his part.

There is some contention that Messenger could neither read nor write, and that the endorsement or agreement signed by him upon the notice of acceptance of the option was incorrectly read to him and that he did not understand it. He does not deny having had his daughter to sign his name to it, but says he did not understand it to be as it appears. The evidence utterly fails to show that it was not correctly read to him, and if he did not understand it, he should have informed himself before signing it. His daughter was present and signed his name for him and at his request, but he did not ask her to explain or read it to him; in fact, he says she did not read it. It is the duty of one signing a contract or paper to ascertain its true meaning and purport, and to understand its contents before doing so. If he does not, he cannot be relieved against it, where he has not been misled or induced to sign it by fraud. "If one sign a written contract without acquainting himself with its contents, he is estopped by his own negligence from asking relief against its obligation, if his signature is procured without fraud." *Ferrell* v. *Ferrell*, 53 W. Va. 515.

The action of the court in not sustaining exceptions to the depositions is assigned as error. A sufficient answer to this assignment is that there is nothing to show that the excep-

tions to the depositions were passed upon by the lower court, but the final decree shows expressly that the exceptions to the depositions were waived.    It is true this recital in the decree is claimed to be incorrect, but the decree is a verity, and we cannot go behind it.    Where a party excepts to depositions, if he wishes to rely upon the exception, he must bring it to the attention of the lower court and have it passed upon, and unless it appears that he has done so, the exception, on appeal, will be treated as waived.    This is a well established rule of practice, and it not appearing to have been done, we cannot consider the exceptions.    *Vanscoy* v. *Stinchcomb*, 29 W. Va. 263; *Hill* v. *Proctor*, 10 W. Va. 59; *Linsey* v. *McGannon*, 9 W. Va. 154; *Middleton's Ex'r* v. *White*, 5 W. Va. 572.

Complaint is made that the special judge who presided and entered the decree complained of, was not selected in the manner provided by law, but that he was selected and the cause submitted to him without notice to the appellants or their attorneys, and without their knowledge.    The record shows that the regular judge of the court being absent and failing to attend and hold the term, and it not having been completed, the clerk of the court held an election for the purpose of electing a special judge, and that all the attorneys present and practicing in the court having voted by ballot, the clerk declared that Robert L. Bland, an attorney practicing in this state, had been duly elected to hold the term in the absence of the regular judge, and that he thereupon appeared in open court and took the several oaths prescribed by law.

The election seems to have been held in conformity to section 11 of chapter 112 of the Code, 1899, section 3630, Ann. Code, 1906.    This section provides that when for any cause the judge of a circuit court shall fail to attend and hold the same, either at the commencement of the term or at any time before its adjournment, or if he be in attendance and cannot properly preside at the trial of any cause therein, the attorneys present and practicing in said court may elect a judge by ballot to hold the term during the absence or for the trial of the cause in which the regular judge cannot preside, but where the regular judge is in attendance, no such election can be held until the same be directed by him by his order

entered of record reciting the cause of such election and
naming the cause in which it is necessary to have a special
judge, and providing that in each of said cases at least one
attorney of record, if there be one, for each party, shall
have reasonable notice in writing of the time of holding the
election. This provision requiring the order of the judge
directing the holding of the election and notice to the attor-
neys of record, applies only where the judge of the circuit
court is in attendance, and does not apply where he fails to
attend and hold the term. The order entered in this cause
shows that the judge was absent, and failed to attend and
hold the term, and the election was held by the attorneys.
It is contended, however, that there is some evidence in the
cause to show that the regular judge was in attendance, but
even if this would be a sufficient ground to prevent the elec-
tion of the special judge, we cannot accept this evidence to
overthrow the order showing the judge's absence and failure
to attend. Not only this, but the statute provides that where
he shall fail to attend and hold the term, either at the com-
mencement thereof or at any time before the adjournment, a
special judge may be elected. He may be present and fail
to hold the term. Then can it be said that the fact of his
being present would prevent the holding of an election for
the purpose of naming a special judge to hold the term, when
the regular judge, though present, declines to do so? We
cannot subscribe to this construction of the statute.

It is true that the order showing the election of the special
judge was brought into the record by the subsequent pro-
ceeding instituted for the purpose of setting aside the decree
complained of, but we fail to see how this can alter the situ-
ation, because the record up to this time failed to show that
the same had been entered by a special judge. Therefore, in
the absence of the order showing his election, the record ap-
pears to be perfectly regular, and when we look to the order
showing his election, it shows that he was elected on the 8th
day of October, to hold the term, and that the decree ap-
pealed from was entered on the 10th day of October, follow-
ing. This order showing his election is a part of the record,
and whether made so by the subsequent proceeding or not
is immaterial.

The appellants challenge the regularity of the election, and

say that the record should show the number of votes received by Mr. Bland, and the number received by any other person voted for, and thereby demonstrate the fact that Mr. Bland received the majority of all the votes. The statute does not require this. It requires the clerk of the court to hold the election, declare the result thereof and enter the same of record. This the clerk, as appears from the order, did.

The appellants say that N. T. Arnold and R. F. Kidd should have been made parties to the .suit. Ordinarily, in a suit for the specific performance of a contract, the only parties necessary to the suit are the parties-to the contract. *Willard* v. *Tayloe*, 8 Wall. 557. It is difficult to see how the defendants can complain because Kidd and Arnold were not made parties. This suit is prosecuted by Fulton, the assignee of the contract, Crennell having assigned it to him for a valuable consideration. If Fulton should have an understanding or arrangement with others by which they are to be interested in the property, it is not clear upon what ground the defendants can complain of such other persons not being parties to the proceeding. There is no controversy between Fulton and those who are now said to be interested in this property with him. Messenger cannot be again called upon to perform the contract. The decree calling for performance concludes the matter as to him. Then, again, at the time of the decree complained of, there was nothing in the record to show, even if it does now show, that Kidd and Arnold had any interest in the suit, but this matter has been brought into the record upon.the notice given to set aside the final decree, and which will be hereinafter referred to, and shown not to be a part of the record. The correctness of the decree must be tested by the record as it was at the time it was pronounced, and if the record did not then disclose the absence of necessary parties, it cannot thereafter be made to so appear.

The remaining question to be disposed of is the action of the circuit court in refusing to set aside the final decree and grant a rehearing. The appellants gave the plaintiff notice that they would move to have the decree set aside and a rehearing granted, because of certain alleged irregularities in the proceedings, the main one relied upon being that the cause was submitted for hearing by the plaintiff's attorneys

in the absence of the appellants or their attorneys and with-out notice to them, contrary to an agreement not to submit or have the same heard in the absence of attorneys for the defendants.

Upon this motion affidavits were filed and evidence taken, and upon a hearing the court declined and refused to set aside the decree. In a suit in equity, where there has not been a final decree, a petition to rehear may be entertained, or where the decree is final a bill of review may be filed, or an original bill may be filed to impeach a decree. But our chancery practice does not authorize such proceeding as is here instituted for the purpose of setting aside this decree. It should be done, if at all, upon a bill or petition filed for that purpose, containing proper allegations. Under section 5 of chapter 134, Code 1899, section 4036 Ann. Code 1906, where a bill is taken for confessed, a motion to reverse or correct the decree must be made in the court entering the decree. But that is not so in this case, as the decree complained of was not upon bill taken for confessed. The decree was pronounced upon the original and amended bills, answer of the defendants and depositions of witnesses.

The defendant, Stewart's Creek Coal Company, being purchaser with actual notice, the deed from Messenger to it was properly canceled and set aside.

We see no error in the decree appealed from, and it is affirmed.

*Affirmed.*