# CHARLESTON.

## NEWBERRY *v*. WEBB *et als*.

Submitted January 18, 1910.    Decided November 22, 1910.

CONTRACTS—*Sale of Lands—Unilateral Contract*.
The decree below is affirmed upon the rules and principles
enunciated in *Pollock* v. *Brookover*, 60 W. Va. 75, and other
cases cited.

Appeal from Circuit Court, Logan County.

Bill by Harmon Newberry against S. L. Webb and others.
Decree for plaintiff, and certain defendants appeal.

*Affirmed.*

*W. S. Laidley, Hubbard & Lee, Dillon & Nuckolls,* and
*John T. Simms,* for appellants.

*Lilly & Shrewsbury* and *Campbell, Brown & Davis,* for
appellee.

MILLER, JUDGE:

By contract of May 19, 1905, and deed of October 14, 1905,
the plaintiff, Harmon Newberry, obtained from the defendants,
G. T. Christian and others, heirs at law of Paren Christian,
deceased, title to some seven tracts of land in Logan county,
in all aggregating, according to survey, 2468.1 acres. The
record shows that at the time of the contract plaintiff paid
$8,000 on account of the purchase money, and the deed recites
a consideration of $49,362.00, of which $25,000 was paid in
cash, and for the residue, $24,362.00, the plaintiff executed
his nine several notes for $2,706.89 each, to secure the payment
of which a vendor's lien was reserved in the deed.

After the plaintiff had purchased these lands and put his
contract on record, but before obtaining his deed, S. L. Webb
and J. M. Johnson, two of the appellants, through W. S. Laidley,
their attorney, by letter of September 29, 1905, addressed to
the plaintiff, asserted a claim of right to these lands, under
certain alleged contracts represented in the letter to be of record,
and that they had made sale thereof at the price of $25 per acre.
The date of said contracts, and the deed book where recorded,
not being referred to in the letter.

No notice of this letter was taken by Newberry, but having fully executed his contract with the Christian heirs, and obtained his deed for the lands, on August 10, 1906, he instituted this suit against Webb, Johnson and Harper and the grantors in his deed, to cancel and annul as clouds upon his title the Webb, Johnson and Harper contracts.

Of the contracts under which Webb and Johnson claim, the, first purports to be dated April 25, 1903, and to be made by G. T. Christian and others with Webb, Johnson and Harper; the second, bearing the same date, by Zerilda Ferrell and husband with said Webb, Johnson and Harper; the third, dated April 30, 1903, by Spicie E. Stanley and husband with Webb and Johnson only. Thus by executing these several contracts, all the heirs at law of Paren Christian joined therein, for, with the exception of the last, omitting the name of Harper, and calling for $15.00 per acre, instead of $17.50 per acre called for in other contracts, and varying somewhat in other particulars, not material in this controversy, they contain in other respects substantially the same terms and conditions.

On July 16, 1903, Webb, Johnson and Harper notified the Christian heirs by registered mail, that they were ready and desirous of accepting a conveyance of said land, and to make the payment called for by said contract, as soon as they, the Christian heirs, should have a survey made, the area of the land ascertained, and delivered to them with proper deed.

It clearly appears that Webb, Johnson and Harper were promoters in making these contracts, and depended on making sale of the lands to others as a means of executing the contracts on their part.

The material provisions of the first two contracts, and because of its special terms controlling, we think, the third, and on which the rights of the appellants depend, are as follows: "Payments hereinunder shall be made in three months from the date hereof, or as soon thereafter as the area of the property hereinafter described can be determined by proper surveys, and deed of conveyance with covenants of general warranty properly executed, but if a further time is necessary to perfect the title to enable the parties of the first part to convey a perfect title, then said payments shall be made as soon as said title can be perfected. Should the parties of the second part fail to make

the payment above mentioned as stipulated within thirty days after the expiration of said three months, then this contract of sale shall be null, void and of no effect." Another provision, somewhat pertinent, is as follows: "And the said parties of the second part hereby agree that in the event of G. T. Christian making a compromise with the King people in order to remove a pretended cloud over the title to the said Christian tract of land, then the said parties of the second part hereby agree to advance the amount to be paid, to remove and clear up said ·title, but only upon the request of the said G. T. Christian."

The contracts, containing no covenants binding Webb, Johnson and Harper to buy and pay for these lands, were plainly unilateral in character, and notwithstanding their notice of acceptance, not called for in the contracts, they were never converted into valid executory contracts for the sale of these lands by the tender of the purchase money at any time, or within the time required by the provisions thereof. *Pollock* v. *Brookover*, 60 W. Va. 75, 79.

Numerous grounds for relief are alleged in the bill, among them: Want of acknowledgment by the parties of the first part of the first contract; failure of the husbands of two of them, married women, to join therein; that G. T. Christian, a party to the first contract, and employed by Webb, Johnson and Harper to procure the signatures of the other heirs, and interested therein, took and certified as notary the acknowledgments of Ferrell and wife, to the second contract; that Harper, an interested party, named as one of the purchasers in the first and second contracts, took and certified as notary the acknowledgments of Stanley and wife to the last agreement: so that all of said contracts were either not acknowledged at all, or were so acknowledged before interested parties as to render them either void in toto, or the recordation thereof void and ineffective to give either actual or constructive notice thereof to plaintiff. Another ground is that said contracts were changed in material parts after being signed by the parties, thereby rendering them void and of no effect. Still another ground is the alleged failure of Webb, Johnson and Harper, on demand of G. T. Christian and others, to furnish, as stipulated, the amount necessary to compromise with Henry C. King. Another and last ground alleged is, that defendants, Webb, Johnson and

Harper, had wholly failed and neglected to comply with the contracts upon their parts, and in fact had abandoned the same.

The Christian heirs all joined in an answer acknowledging and confessing the allegations of the bill. The only issues presented by the pleadings therefore arise upon the cross-bill answer filed by defendants, Webb, Johnson and Harper. The answer of these defendants, specially replied to, may be said to fairly put in issue the alleged inherent defects in their contracts, their invalidity, and want of proper recordation, so as to give either constructive notice, or actual notice thereof, denied by the plaintiff.

But as we view the case all these questions thus presented are immaterial in disposing of this appeal, for if upon their cross-bill answer, calling for affirmative relief, these defendants are not entitled to specific performance of the contracts of April, 1903, the fact that plaintiff became a subsequent purchaser of the property, and obtained his deed for the lands, as alleged, can add nothing to their rights. The plaintiff, standing in the shoes of the Christian heirs, is entitled to make every defense to the cross-bill answer which they could make. So we will not attempt to consider or dispose of many of the interesting questions presented in the briefs and arguments of able counsel on both sides of this controversy.

It is not controverted, but admitted, that after Webb, Johnson and Harper, in July, 1903, gave their notices to the Christian heirs, of their professed willingness and readiness to comply with the terms of the contracts on their part, the latter furnished abstracts of title, and that shortly before the time expired within which by the terms of the contracts, these would-be purchasers might take and pay for the property, demand was made upon them by said heirs, either for sufficient money to compromise with King, or to make surveys of the lands, which was refused. Nor is the fact controverted that on August 23, 1903, the parties, or their representatives, met in the office of W. S. Laidley, attorney, and that payment of the purchase money was there demanded of Webb, Johnson and Harper, and that it was then represented by them that they would be unable to handle the property under these contracts, and that a new contract was then proposed by them, which should be drawn by Laidley, their attorney, and submitted to the Christian heirs.

A new contract was prepared by Laidley and was submitted by him to the sellers, but declined by them, for several reasons, among them, that the new contract provided that the lands proposed to be sold should be in one compact body, while said lands were not thus situated. Correspondence ensued between Laidley and Stanley, the latter representing the sellers, and the whole matter seems to have been finally dropped. No new contract was ever executed. Nor did Webb and Johnson, Harper having disposed of his interest to them, afterwards or after giving their notice to Newberry propose to pay the purchase money or comply with the contracts on their part, until impleaded in this suit.

Without attempting to further detail the pleadings and evidence, it is our conclusion that the case is controlled as to its facts and the law applicable thereto, by the principles announced in *Pollock* v. *Brookover,* 60 W. Va. 75; *Dyer* v. *Duffy,* 39 W. Va. 149; *Heflin* v. *Heflin,* 63 W. Va. 29; *Williams* v. *Maxwell,* 45 W. Va. 297; *Whittaker* v. *Improvement Co.,* 34 W. Va. 217; *Hoult* v. *Donahoe,* 21 W. Va. 294, and other cases. It is useless, therefore, to reiterate these legal principles in this case.

We are clearly of opinion, therefore, that the decree below should be affirmed, and it will be so ordered.

*Affirmed.*