HARRY E. KELLEY v. ELLA P. McBLAIN.

1. TAX DEED—*Insufficient Proof of Existence.* Where a tax deed is proved only by a supposed record copy of the same, found in the office of the register of deeds, and such copy purports to show that the deed was acknowledged before a probate judge, but does not show that such judge ever attached the seal of his office to the acknowledgment, and there is no evidence showing that such seal was ever attached, *held,* that the proof of the existence of the tax deed is insufficient.

2. POWER OF ATTORNEY—*Certain Facts Not Proved by Recitals.* Recitals in a power of attorney to make a deed of conveyance of land, and in the deed stating that the persons executing the power of attorney and the deed are the heirs of a person who previously owned the land, are not sufficient evidence as against a stranger to these instruments, of the death of the supposed ancestor, or that the persons represented to be his heirs are in fact his heirs.

*Error from Coffey District Court.*

THIS was an action brought by *Harry E. Kelley* against. *Ella P. McBlain,* to quiet title to certain real estate in Coffey county. Various proceedings were had in the case, as will appear from the following findings made by the trial court on the final trial of the case, which findings, with the conclusions of the court, are as follows:

CONCLUSIONS OF FACT.

"1. On July 26, 1879, Coffey county, Kansas, conveyed the land in controversy, by tax deed of that date, to one Kenderdine. Said tax deed was recorded in the office of the register of deeds in said county July 29, 1879. Said deed was founded on the tax sale of 1875 for the delinquent tax of 1874.

"2. Previous to May 30, 1883, the said Kenderdine conveyed said land to the plaintiff, who immediately broke hedgerows around and upon the same, and caused stone to be hauled upon said land to be used in the construction of a foundation for a house; the stone, however, were never used for any purpose. Other than above stated, the land has always been and now is, open, unoccupied, and uncultivated.

"3. On May 30, 1883, the plaintiff filed his petition in this case, and gave the defendant notice thereof by publication. The defendant was at that time, previous thereto, and ever since has been, a resident of the state of New York. The plaintiff obtained a decree against the defendant upon default, July 14, 1883.

"4. On July 16, 1883, the plaintiff conveyed said lands to one McGinnis, who purchased the same for the sum of $640 in good faith, and he subsequently sold in good faith to one Hale, who purchased for value and in good faith, and now holds the same and claims to own it, and has incumbered it.

"5. On April 6, 1886, the defendant by appropriate proceeding under the statute obtained leave to, and filed an answer to the plaintiff's petition herein, which answer contained a general denial, and also a cross-petition in ejectment, containing the usual averments, and claimed damages for the wrongful withholding of the premises.

"6. On December 6, 1886, defendant filed an amended answer, which in addition to the former one, alleged the sale of the premises by the plaintiff after obtaining said decree, and

prayed for the value of said land if the possession thereof could not be awarded.

" 7. The record of the tax deed upon which the plaintiff relies was placed in evidence instead of the original. The deed appeared to have been acknowledged before a probate judge, but no official seal was shown.

" 8. The time fixed in the final redemption notice for the final redemption of the land in controversy was less than three years from date of sale.

" 9. Each of the parties paid the tax of 1875 upon the premises, the plaintiff upon his certificate, and the defendant took a receipt therefor.

" 10. The defendant has a continuous and connected chain of title from the United States.

" 11. One of the conveyances relied upon in said chain of title is a deed from the heirs of John Bement, who received the patent to said land from the United States. The only evidence tending to show the death of John Bement, or that the grantors in said deed were the heirs of said John Bement, was the recitals in said deed, which fully recited both the death and the heirship.

" 12. When the plaintiff sold said land he received $640 therefor. At that date the land with a clear title was reasonably worth $950. At the date of this trial it was reasonably worth the sum of $1,625.

" 13. The defendant has paid the taxes on said land each year since 1870, except the year 1874, for the delinquent tax of which year it was sold. In 1874 she sent the money to an agent in Kansas for the purpose of paying the tax of that year, but for some reason the payment was not made."

CONCLUSIONS OF LAW.

" 1. Plaintiff's tax deed is invalid, because of defective final notice.

" 2. The land having passed after the decree to a purchaser in good faith, the defendant is entitled to recover a money judgment.

" 3. The measure of defendant's damages is the reasonable value of the land at the date of sale by plaintiff, to wit, $950, with interest, for which amount he ought to have judgment."

Upon the foregoing findings and conclusions, judgment was rendered in favor of the defendant and against the plaintiff for $950, as principal damages, with $249.37 as interest there-

on, aggregating $1,199.37, and costs taxed at $29.50. To reverse this judgment the plaintiff brings the case to this court.

*Redmond & Junkins,* for plaintiff in error.

*Otis D. Swan,* and *Kellogg & Sedgwick,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This action was commenced originally as an action to quiet title, in which the plaintiff in error was the plaintiff and the defendant in error was the defendant. Service of summons was obtained only by publication. The title was quieted in the plaintiff upon a default on the part of the defendant, and immediately afterward the plaintiff sold and conveyed the land to an innocent purchaser. The judgment was afterward opened under § 77 of the civil code. The defendant answered, setting up that she owned the land, and asking for damages. Judgment was afterward rendered in her favor, and the plaintiff now seeks a reversal thereof in this court. The plaintiff claims the land under a tax deed executed to Charles S. Kenderdine, and through intermediate conveyances down to himself. The defendant claims the land under the original patent issued by the United States to John Bement, and through intermediate conveyances down to herself.

The first question presented to this court for consideration is, whether the tax deed under which the plaintiff claims is valid. He proved his tax deed only by a supposed record copy of the same found in the office of the register of deeds. This copy purports to show that the tax deed was acknowledged before the probate judge of Coffey county, but it does not show that such probate judge ever attached the seal of his office to the acknowledgment. Without this seal, or some showing that the seal had been attached to the acknowledgment, the record of the deed is void. (See *Meskimen v. Day,* 35 Kas. 46, and the statutes hereafter cited.) And even the deed itself without the

1. Tax deed—insufficient proof of existence.

seal would be no evidence of title, and would probably be void. (See act relating to taxation, §.138; act relating to conveyances, §§ 7, 15, 19 and 27, and other sections from 7 to 27; and the act relating to probate courts, § 2.)

There are other questions presented with reference to the tax deed, but as no valid proof was introduced in the court below that any tax deed of any kind was ever executed, it is unnecessary to consider them.

The next question to be considered is, whether the defendant proved by any competent evidence that she had any title to the land. We think that she did not. It is admitted that the title to the land was originally in John Bement, and the defendant, in order to show that the title passed from him to her by a chain of intermediate conveyances, introduced in evidence, among other papers, what purported to be a power of attorney to make a deed, and a deed from heirs of John Bement; but there was no evidence introduced outside of this power of attorney and this deed that tended to prove that John Bement was dead, or that he had any heirs, or who his heirs were if he had any, or that the persons who executed this power of attorney and this deed were his heirs. And certainly, recitals in a power of attorney to make a deed of conveyance of land and in the deed stating that the persons executing the power of attorney and the deed are the heirs of a person who previously owned the land, are not sufficient evidence as against a stranger to these instruments of the death of the supposed ancestor, or that the persons represented to be his heirs are in fact his heirs. (*Costello v. Burke*, 63 Iowa, 361; same case, 19 N. W. Rep. 247; *Potter v. Washburn*, 13 Vt. 558; same case, 37 Am. Dec. 615.) There is no evidence that John Bement himself ever executed any power of attorney, or any deed, or any other instrument affecting his real estate. The foregoing power of attorney, purporting to have been executed by the heirs of John Bement, was executed May 25, 1869, and the above-mentioned deed was executed August 2, 1869, and both were recorded on April 19, 1870; but no

2. Power of attorney—certain facts not proved by recitals.

person ever took or held the possession of the property under either of these instruments; and the final trial in this case, at which both these instruments were introduced in evidence, was had in April, 1887. Evidently neither this power of attorney, nor the deed, nor the record thereof, can be considered as an ancient document, and could not be introduced in evidence or considered under the rules of evidence relating to ancient documents; and evidently there is sufficient evidence in existence to show whether John Bement is dead or not, and if dead, who are his heirs.

There are other questions presented in this case, but with the views we have taken of the questions already discussed, we think it is unnecessary to consider the other questions.

The judgment of the court below will be reversed, and the cause remanded for a new trial.

All the Justices concurring.