DAVIS et al. v. SEYBOLD.

(Circuit Court of Appeals, Fourth Circuit. March 4, 1912.)

No. 975.

1. EJECTMENT (§ 9*)—PROOF REQUIRED.

Plaintiff in ejectment must recover upon the strength of his own title, and cannot rely upon the weakness of defendant's title.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 16–29; Dec. Dig. § 9.*]

2. EVIDENCE (§ 345*)—COPIES OF DEEDS—SUFFICIENCY.

An attested copy of a deed was not inadmissible in evidence because the seal of the notary public who took the acknowledgment did not appear, where the certificate recited that the seal was actually attached.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1302–1314, 1331–1360; Dec. Dig. § 345.*]

3. ACKNOWLEDGMENT (§ 17*)—WHO MAY TAKE—DEPUTY CLERKS.

Under Gen. St. Nev. 1885, § 2279, and under Code W. Va. 1868, c. 7, § 11, and Acts Va. 1863, c. 14, § 1, which authorize deputy clerks to transact all official business the same as their principals might, a deed to lands in West Virginia was not inadmissible in evidence because the acknowledgment was taken by a deputy clerk in Nevada.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. §§ 79–84; Dec. Dig. § 17.*]

4. EJECTMENT (§ 89*)—EVIDENCE—ADMISSIBILITY—CERTIFIED COPIES OF SURVEYS.

In ejectment, certified copies of surveys of land joining the land in controversy were properly admitted to identify the land claimed by plaintiff and to describe and limit the tracts claimed by defendants, so as to give the jury a definite idea as to the exact tracts which defendants claimed by possession under color of title.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 249–253; Dec. Dig. § 89.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5. ADVERSE POSSESSION (§ 85*)—EVIDENCE—SUFFICIENCY.**

In ejectment, evidence *held* insufficient to show that defendants had been in possession of the land under color of title within the West Virginia statute of limitations.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 498–503, 656, 657, 660, 668, 688–690; Dec. Dig. § 85.*]

**6. DEEDS (§ 38*)—DESCRIPTION—SUFFICIENCY.**

A deed to "five hundred acres of land surveyed off the north side" of a certain piece of land sufficiently described the tract, when taken in connection with the deed to the grantor, which contained a definite description.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 65–79; Dec. Dig. § 38.*]

**7. DEEDS (§ 99*)—DESCRIPTION—SUFFICIENCY.**

If a deed ambiguously or uncertainly describes land, prior deeds in the chain of title may be looked to to secure the true description. .

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 261–265; Dec. Dig. § 99.*]

**8. DEEDS (§ 38*)—INTEREST CONVEYED—OFFICIAL PLATS.**

Where a deed purports to convey all of the grantor's interest in a tract, its validity is not affected by the fact that the official plats show a greater acreage than specified in the deed.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 65–79; Dec. Dig. § 38.*]

McDowell, District Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern District of West Virginia, at Philippi.

Ejectment by Christian Seybold against Henry G. Davis and others. Judgment for plaintiff, and defendants bring error. Affirmed.

This is an action of ejectment. The plaintiffs in error were the defendants below and will be hereafter referred to as the defendants, and the defendant in error (plaintiff below) will be referred to as the plaintiff. The plaintiff to show title introduced the following:

(1) Patent, dated January 1, 1853, from commonwealth of Virginia to William L. Vanzandt, granting a tract containing 1,000 acres, described by metes and bounds, lying on the waters of Burgoo and Leatherwood creeks, in Randolph county.

(2) Quitclaim deed, dated January 19, 1855, from William L. Vanzandt to Solomon W. Jewett, conveying the same 1,000-acre tract, described as lying in Randolph county.

(3) Deed, dated September 24, 1861, from Solomon W. Jewett to James C. Burnett, conveying all of the grantor's right, title, interest, and claim in and to 500 acres of land in Randolph county, Virginia, "it being the west half of one thousand acres deeded to me in 1854 by Wm. Vansatt of the city of New York, 21 (E. 1) adjoining 500 acres which recently deed to be from p. t. Wolcha and is on Bergoo and Leatherwood creeks the tract is equally divided by a line running at right angles to the south boundary line across the tract to the north line thereof, for a full description see deed of conveyance on the records of Beverly, Randolph county, Virginia."

(4) Deed, dated January 5, 1867, from James C. Burnett to Jerome Brown, conveying "that certain piece or parcel of land lying and being in the county of Randolph, in the state of Virginia, being the west half of that certain tract of land formerly owned by W. S. Vanzandt." Then follows what is intended as a copy of the metes and bounds as found in the patent to Vanzandt.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

(5) Deed, dated August 12, 1872, from Jerome B. Brown to Thomas Mc-Cullough, conveying the same west half of the 1,000-acre tract as in the last deed above.

(6) Deed, dated July 28, 1873, from Thomas McCullough et ux. to Elizabeth Aultman, conveying "the following described premises, situate in the county of Randolph and state of West Virginia, and known as that certain piece or parcel of land lying and being the west half of that certain tract of land, formerly owned by W. S. Vanzandt." Then follows what is intended for a copy of the description of the 1,000 acres as given in the patent to Vanzandt.

(7) Deed, dated February 26, 1894, from Elizabeth Aultman and Josiah Aultman her husband, of Ohio, to Christian Seybold (in consideration of $1,500) conveying "the following described premises situated in the county) of Randolph and state of West Virginia, and known as being 500 acres of land to be surveyed off the *north side* of that certain piece or parcel of land, lying and being the *west half* of that certain tract of land formerly owned by W. S. Vanzandt." Then follows what is intended for a copy of the calls of the Vanzandt patent. "Containing one thousand acres; the said five hundred (500) acres to be surveyed off that portion of the above tract which yet remains to me, and possibly some less than one thousand (1,000) acres. And said above tract of 1,000 acres is further described as being the same as conveyed to me by Thomas McCullough by warranty deed of the date of July 28, 1873. * * *"

(8) Deed, dated December 13, 1899, from Josiah Aultman (husband) and Nora Aultman (daughter), of Ohio, only heir of Elizabeth Aultman, deceased, to Christian Seybold, of Pennsylvania, conveying (in consideration of $400) "all of the balance of that original tract of land which was conveyed by the state of Virginia to Wm. L. Vanzandt and described as follows": (Here follows what is intended as a copy of the calls in the Vanzandt patent) containing one thousand acres, "and which was conveyed by William L. Vanzandt to Solomon W. Jewett by deed dated January nineteenth, 1855, and recorded in Deed Book No. 20, page 192, and by Solomon W. Jewett to James C. Burnett by deeds dated September 24, A. D. 1861, and recorded in Deed Book A, page 309, and by James C. Burnett to Jerome B. Brown and recorded in Deed Book B, page 324, and by Jerome B. Brown to Thomas McCullough, by deed dated August 12th, A. D. 1872 and recorded in Deed Book D, page 504, and by Thomas McCullough to Elizabeth Aultman by deed dated July 28, A. D. 1873, and recorded in Deed Book D, page 787, and now by these presents the heirs of Elizabeth Aultman, deceased, do now convey the balance of the above mentioned tract containing two hundred acres, more or less, lying on the upper or east side of the original tract, subject to all legal highways. The above tract of land is situated in Randolph county, and Webster county, West Virginia, on the waters of Burgoo, a branch of the Elk river."

After a great amount of testimony had been introduced, the trial court struck out the defendants' evidence and directed a verdict for the plaintiff for the western half of the original Vanzandt 1,000-acre tract, the dividing line being laid down according to the deed from Jewett to Burnett heretofore mentioned. Exception was duly taken, and this action is, inter alia, assigned as error. Judgment was entered in accordance with the verdict, from which judgment a writ of error was sued out to this court.

E. A. Bowers and George E. Price (Price, Smith, Spilman & Clay, on the briefs), for plaintiffs in error.

W. E. R. Byrne and W. B. Maxwell (E. L. Maxwell, on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and McDOWELL and SMITH, District Judges.

PRITCHARD, Circuit Judge (after stating the facts as above). [1] The points involved in this controversy are intricate, involving as

they do many important questions relating to what may be properly termed land law. It is well settled that in suits of this character, where it is sought to recover land, the plaintiff must recover upon the strength of his own title and cannot rely upon the weakness of his adversary's title. As appears from the statement of facts, the plaintiff, beginning with a grant from the state (known as the Vanzandt patent), offered a complete chain of title covering the land in controversy and connecting his title with the Vanzandt grant.

There are a number of assignments of error which may be epitomized as follows:

(1) That a certified copy of the deed of Solomon W. Jewett to James C. Burnett was incompetent as evidence, in that it was not under the official seal of the notary public before whom the grantor acknowledged the execution of the same, and that this deed was void because the original had not been properly acknowledged, and therefore the recordation thereof irregular.

(2) That copies of the eight surveys, purporting to be certified copies of the original surveys of lands from the records of Randolph county, W. Va.—not embracing the land in controversy—but for the purpose of locating and describing the land in controversy, were introduced over the objection of the defendants.

(3) That the court erred in excluding the defendants' evidence.

(4) That the court erred in submitting to the jury plaintiff's instruction No. 1.

(5) That the court erred in refusing to set aside the verdict of the jury, and also that the court erred in entering judgment in favor of the plaintiff.

[2] We will first consider the point as to whether the deed from Solomon W. Jewett to James C. Burnett was properly admitted in evidence in the trial court. It appears that the seal of the notary public who took the acknowledgment of the grantor does not appear upon the attested copy which was offered in evidence, and it is insisted by the defendants that it is essential that this seal should appear upon such copy.

This question has been passed upon in many instances by the courts of various states, with the result that in a large majority of cases it has been held that, where a certified copy of a deed is offered in evidence, and it appears from an inspection of the same that the official seal of the officer had been affixed to the original writing, the courts will admit such attested copy as evidence in the case. Some of the courts have even gone so far as to hold that it is not necessary for the recording officer to place the seal upon his record. However, in this instance it does appear, as we have stated, that the certificate of the official who certified this copy recites the fact that the seal was attached to the original.

The requirement that deeds acknowledged before a notary public or any official having a seal should be attested by attaching the seal of such official is a wise provision, inasmuch as the use of such seal imports the verity of the document in question, and thus prevents to a great extent the use of forged instruments as evidence in the trial

of a case. If it affirmatively appeared that the original deed did not contain the seal of the notary before whom the acknowledgment was taken, then, under the general rule, a certified copy of such document could not be offered in evidence because the certificate of the official certifying the same would necessarily disclose a defect in the original. But where the certified copy contained, among other things, the statement of the recording officer to the effect that the original document was acknowledged before a notary public and—as in this instance—his seal was attached thereto, it is presumed that a seal was attached to the original document, notwithstanding the fact that the recording officer failed to copy the same in his certificate accompanying the attested copy. In the case of Jones v. Martin, 16 Cal. 165, the court, in referring to this question, said:

"We think the court erred in excluding the deed in this case. Take the transcript all together, and we think it shows sufficiently that the seal of the notary was affixed to the instrument. The certificate asserts that the notary affixed his seal to it, and the words 'no seal,' in brackets in the margin, do not imply that there was no seal affixed, but are a mere note of the recorder of the place of the notarial seal, which he had probably no means of copying, nor was it necessary that he should transcribe it."

In the case of Addis et al. v. Graham et al., 88 Mo. 197, the first syllabus is in the following language:

"Where in the record copy of a deed offered in evidence the statement of the officer taking the acknowledgment that he affixed his seal appears in the body of his certificate, the presumption arises that his seal was attached thereto, although no written scroll or seal was copied into the record by the officer recording the deed."

In the case of Witt v. Harlan, 66 Tex. 660, 2 S. W. 41, Chief Justice Willie, in disposing of this question, said:

"It was not essential to the admission in evidence of the record copy of the deed from Ringo to Barnes that anything should appear in the copy to represent the seal required to accompany the certificate of acknowledgment. This was settled in Ballard v. Perry, 28 Tex. 347, and is not now an open question."

This rule is sustained by the following authorities: Colvin v. Land Company, 23 Neb. 75, 36 N. W. 361, 8 Am. St. Rep. 114; Norfleet v. Russell, 64 Mo. 176; Thorn v. Mayer, 12 Misc. Rep. 487, 33 N. Y. Supp. 664; Kelly v. McBlain, 42 Kan. 764, 22 Pac. 994.

We have carefully considered the West Virginia authorities relied upon by counsel for the defendants, and we are of opinion that they do not apply to the case at bar. Therefore we are of opinion that the ruling of the court below in admitting this evidence was proper.

[3] It is also insisted by counsel for the defendants that the court below erred in permitting the deed from James C. Burnett to Jerome B. Brown to be introduced in evidence on the ground that the acknowledgment thereof was taken by a deputy instead of the clerk himself. It appears from the acknowledgment that the same was taken on January 5, 1867, in the state of Nevada, by D. W. Hastings, deputy of E. B. Dickenson, clerk, and it further appears from the certificate of the judge of the Eighth judicial district that the said Hastings was the deputy of Dickenson and that his acts were entitled to full faith

and credit as such deputy. Section 2279 of the General Statutes of Nevada (1885), Act Feb. 19, 1864 (St. 1864, p. 143), provides as follows:

"All prosecuting attorneys, county recorders, clerks of the several district courts. county clerks, sheriffs, assessors, collectors of taxes, and constables, are hereby authorized to appoint deputies, who shall have power to transact all official business pertaining to said officers, to the same extent as their principals."

By reference to chapter 7, § 11, of the Code of West Virginia 1868, Acts of 1863, c. 14, § 1, the following provision will be found:

"The clerk of any court, with the consent of such court, or of the judge or judges thereof, in vacation may appoint any person his deputy. A sheriff, recorder. or surveyor of lands, with the consent of the circuit court of the county, or the judge thereof in vacation, may appoint any person his deputy. An assessor may appoint a deputy with the consent of the board of supervisors of the county; or, if there be no such board, with the consent of the judge of the circuit. Such consent shall in each case be entered of record. The deputy during his continuance in office, may discharge any of the duties of his principal; and, any default or misfeasance in office of the deputy shall be deemed a breach of the condition of the official bond of the principal."

It is but fair to assume that where an acknowledgment as to the execution of a deed is taken in another state and signed by the principal officer by his deputy, said deputy was acting under the authority conferred upon him by his appointment; and that he was authorized by the law of that state to take such acknowledgment. A deputy thus appointed becomes a public officer, and it would work great hardship if it were not the policy of the law to uphold certificates of this character. Objections of this kind are highly technical and should not be countenanced unless it clearly appears that such certificates are not supported by any fair inference to be drawn from the facts and circumstances surrounding the transaction. It will be seen from the West Virginia statute, which we have just quoted, that a deputy during his continuance in office by virtue of his appointment is entitled to discharge any of the duties of his principal, and this provision is identical with the provision contained in the Nevada statute which we have also quoted.

By the Acts of the Legislature of West Virginia, passed June 26, 1863 (c. 1, § 1, p. 3, Acts of 1863), it was provided:

"The recorder of every county shall have the same powers and perform the same duties, in relation to receiving acknowledgment or proof of, admitting to record, recording, listing and certifying deeds, contracts, powers of attorney. wills, inventories and other writings; and docketing judgments and decrees and bonds and recognizances having the force of judgments, and recording lis pendens and attachments; and the issuing of marriage licenses, as the clerk of the court of such county had or was liable to perform, under the laws of Virginia, in force within the limits of this state, on the nineteenth day of June, eighteen hundred and sixty-three."

By the Code of Virginia of 1860, c. 121, § 3, p. 569, it was provided that:

"Such court or clerk shall also admit any such writing to record as to any person whose name is signed thereto, upon a certificate of his acknowledgment before a justice or notary public of the United States, written or annexed to the same to the following effect, to wit: 'County (or corporation) of ...... to wit: I, ......, a justice of the peace (or notary public) for the

county (or corporation) aforesaid, in the state (or territory or district) of ......, do certify that E. F. (or E. F. and G. H., etc.), whose name (or names) is (or are) signed to the writing above (or hereto annexed), bearing date of the ...... day of ......, has (or have) acknowledged the same before me in my said county (or corporation) aforesaid.' "

Thus it will be seen that the statute of West Virginia, at the time the deed in question was executed, did not require that the clerk of a foreign court should certify the acknowledgment of a grantor under his official seal. While we do not deem it necessary to rely upon this provision of the West Virginia statute, nevertheless it should be considered in connection with the other facts and circumstances.

[4] The next question relates to the introduction of the eight certified copies of surveys of land five of which join the land in controversy in this action. This evidence was admitted over the objection of the defendants. It was offered for the purpose of describing and locating the land claimed by the plaintiff and describing and limiting the tracts of land claimed by the defendants so as to give the jury a definite idea as to the exact tracts of land which the defendants claimed by possession, under color of title. An examination of the defendants' title deed from Hutton and others to J. B. Walker and others shows that the title intended to be conveyed was composed of eight specifically named tracts, and, inasmuch as the defendants relied upon possession of the land in controversy under color of title, it became highly important to locate each of these eight tracts. In this connection it should be borne in mind that the eight tracts are described by separate and distinct metes and bounds as conveying the number of acres called for in each tract. Therefore this evidence was offered for the purpose of showing the true location of the respective tracts upon the map. It is insisted by the plaintiff that the Jacob Conrad 770-acre survey, the William A. Snyder 1,000-acre survey, the J. P. K. Hughart 1,000-acre survey, the J. P. K. Hughart and William A. Snyder 3,033-acre survey, and the H. C. Moore 690-acre survey all adjoin the Vanzandt tract and thereby form a complete boundary of the land in controversy, and the record shows that none of said five parcels of land lap upon or in any way interfere with the land in controversy and that the lines of said several surveys call for those of the lands in controversy.

The defendants relying upon possession under color of title, it thereby became important to show the exact location of each of the tracts claimed by the defendants in order that the court might determine as to where the defendants had been in possession of the tracts to which we have referred, and, further, as to whether any of the land in controversy was included within such tracts as may have been in the adverse possession of defendants under color of title. It clearly appears that the location of these separate tracts, although contiguous, does not in any wise interfere with the boundary of land claimed by the plaintiff. It appears from the evidence of Surveyor Wilson, who made the official plat, that he indicated thereon the several tracts or parcels of land as shown by the attested copies of the eight surveys in question. The defendants, by their witness Yaeger, a practical surveyor, show that he had made a survey of the outside boundary of the

10,012-acre tract, and that the eight parcels of land had been correctly located upon the plat by surveyor Wilson, and that these were the eight parcels that constituted the entire boundary to which defendants claimed title.

Under the circumstances, we think that the ruling of the lower court in admitting this evidence was eminently proper.

The contention of counsel for the defendants that the land in controversy was forfeited to the state of West Virginia for nonpayment of taxes, and that, by virtue of such forfeiture, the title to this tract passed to another, has been carefully considered; but, after a careful examination of the record, we are of the opinion that such contention is without merit.

[5] We will now consider the question as to whether the defendants, at the commencement of this action, had been in possession of any portion of this land under color of title—that is, such possession as would give them a perfect title to the lands in controversy, under the West Virginia statute. The statute of West Virginia relating to this question is in the following language:

"No person shall make an entry on, or bring an action to recover, any land, but within ten years after the time at which the right to make such entry or to bring such action shall have first accrued to himself or to some person through whom he claims."

The syllabus in the case of Core v. Faupel, 24 W. Va. 238, thus states the law as to what is required to constitute possession under color of title:

"To constitute such a possession, as will bar the title of the legal owner to land, it must be adverse, actual, visible, and exclusive, continuous, and under a claim or color of title. If any one of these constituents is wanting, the possession will not effect a bar of the legal title."

Judge Snyder, speaking for the court in this case, said:

"It must be (1) hostile or adverse, (2) actual, and (3) visible, notorious, and exclusive, (4) continuous and under a claim or color of title."

Judge Snyder, speaking further, said:

"To make out a title by adverse possession, as a general rule, the title must be adverse in its inception. What is the extent of his possession is to be determined by the limits of his title or color of title. He must show that such adverse possession has been continued, consecutive, and unbroken for the statutory period. The moment the premises become vacant, that moment the owner, by reason of his legal title, will be regarded in the constructive possession, and the adverse possession of the wrongdoer at an end. The principal office of a claim or color of title is to define the boundaries and describe the extent of the adverse holding. The question of what is color of title is a matter of law, and, when the facts exhibiting the title are shown, the court must determine whether they amount to color of title. It has been asserted that a deed, void on its face or disclosing facts which show that the person from whom it is acquired had no title, cannot form the basis of an adverse possession. Moore v. Brown, 11 How. 414 [13 L. Ed. 751]; Simmons v. Lane, 25 Ga. 178; Marsh v. Weir, 21 Tex. 97."

Notwithstanding the fact that each of the eight tracts in question, as we have stated, are fully described in the respective conveyances, it appears that Col. Elihu Hutton et al. on the 27th day of July, 1888, executed a deed to J. B. Walker et al., the boundary lines of which

include the Vanzandt tract as well as the eight tracts, and this description is contained in the subsequent deeds in the chain of title up to and including the one to defendants. Notwithstanding this effort to include the Vanzandt tract as being within the boundary of the eight tracts, it is significant that the deed of July 27, 1888, and those subsequent thereto, purporting to convey the 10,012-acre boundary, carefully state in each instance that this boundary is made up of the eight surveys alone, and nowhere is any mention made of the fact that the 1,000-acre Vanzandt tract is included within this boundary. If they had intended to set up a bona fide claim of title to the Vanzandt tract, it would have been an easy matter to have described it as being the ninth tract with as much accuracy as were the other tracts within said boundary. Leases were given, huts erected on some of the surveys, and tenants placed therein with the obvious purpose of acquiring title by possession. It appears, however, that when the plaintiff became acquainted with the fact that a tenant had been placed upon his land that he at once instituted this suit.

The court below, in passing upon the evidence as to defendants' title, held that possession on any of the other tracts or surveys, so far as the 1,000-acre Vanzandt tract was concerned, was not "open, continuous, adverse, notorious, nor exclusive," and that inasmuch as there was no evidence to show that the defendants had had open, continuous, adverse, notorious, or exclusive possession of any portion of the land in controversy for 10 years next preceding the commencement of this action, that, as a matter of law, the defendants had not acquired a legal title to the lands in controversy by possession.

There is nothing contained in the description of either of the eight tracts of land claimed by the defendants, nor in the deed of July 27, 1888, and others executed subsequent thereto, to show that the defendants claimed any land within that boundary save the eight tracts that were specifically described. Therefore, if one had gone to the office of the recorder of deeds, he could have found nothing to indicate that any one (except the plaintiff and his cotenant) claimed the Vanzandt tract. Therefore important links necessary to constitute title by possession are wanting. As was stated in the case of Core v. Faupel, supra:

"The principal office of a claim or color of title is to define the boundaries and describe the extent of the adverse holding."

We have examined the record with a great deal of care and fail to find any evidence to show that the defendants had had actual possession of any part of the 1,000-acre tract for the statutory period prescribed by the laws of the state of West Virginia.

Some confusion has arisen in this case owing to the fact that the official plat shows that there is located on the southern end thereof what is supposed to be a 300-acre tract designated as the Huling tract. There is no legal evidence in this case to show that Huling has or ever had title to the 300 acres as located. As to why this tract was located upon the map we are unable to say, inasmuch as no deed or record of any kind was introduced at the trial purporting to show the outstanding title to this tract in Huling or any one else. It was also in-

sisted that the plaintiff at one time did not claim the 300-acre tract. There is evidence in the record to show that when the plaintiff, Seybold, went upon the premises, Yaeger, a witness for the defendants, informed him that Huling owned 300 acres of that land, and it may be true that Seybold by his conduct at that time gave the impression that he did not own this particular tract.

It is well to remember, however, that Yaeger was at that time acting as agent on behalf of the defendants, and, being a surveyor, one can easily understand how the plaintiff, who was not acquainted with the locality or at all versed in the technicalities relating to the conveyance of land, might have been misled into believing that Huling had a bona fide claim to the 300 acres as pointed out by Yaeger. However, in each count of the declaration it is sought to recover the "west half" of the tract, and nowhere in the pleadings does it appear nor is it shown in the evidence that the plaintiff in any wise recognized the existence of title in any one for the 300 acres in question. It can hardly be contended, under the circumstances, that any statement the plaintiff may have made as to this 300-acre tract would estop him forever from claiming title to the lands which he owned by virtue of his deed from Mrs. Aultman. To contend otherwise would be unreasonable, and we know of no principle by which such a proposition could be maintained.

[6, 7] It is also contended by counsel for the defendants that the deed from Mrs. Aultman to Seybold is void for want of certainty of description. In this instance it appears that the patent to Vanzandt fixed minutely the boundary of the 1,000-acre tract. So also does Vanzandt's deed to Jewett. The deed from Jewett to Burnett refers to the conveyance of Vanzandt to him of the 1,000 acres and conveys by every intendment one-half of this tract "to be divided equally by a line running at right angles to the south boundary line, across the tract to the north line thereof"; Burnett to have the west half. The determination of the location of this straight line across the tract from its south line, which later line is shown by the map to be a single straight line, to its north line so as to divide the tract into equal parts, appears to have been easy of accomplishment, inasmuch as Surveyor Wilson did not have the slightest difficulty in so locating it. Burnett, in his deed to Brown, conveys this "west half," and Brown conveys it to McCullough, and McCullough conveys it to Mrs. Aultman. However, it is insisted that Mrs. Aultman, in her deed of conveyance to Seybold, conveys "premises situate in the county of Randolph, state of West Virginia, and known as being five hundred acres of land surveyed off the north side of that certain piece or parcel of land lying and being the west half of that certain tract of land formerly owned by W. B. Vanzandt." It is argued that the intention of the parties was "that the portion of the entire Vanzandt tract sold was to contain 500 acres and was to be laid off at the north end of the entire tract." We are at a loss to know upon what ground such an assumption can be based in view of the terms of this deed. First, it is contrary to the principle of law that every grantor in a deed will be assumed to convey that part of a tract of land to which he has title, and not that which

he did not own, and upon the theory that his deed is to be construed strongest against him and in favor of his grantee so that no fraud may be perpetrated by him. It is a well-settled principle of law that, if the terms of a deed are ambiguous or uncertain in describing the land conveyed, the courts will look back to prior deeds in the chain of title to secure the true description of the land.

Applying this rule, if we look back to the deed from McCullough to Mrs. Aultman, we will find that Mrs. Aultman's interest in said land consisted of a certain portion of the 1,000 acre Vanzandt tract. Therefore it necessarily follows that the land she owned, at the time of her conveyance to Seybold, was that portion of this tract of land to which she had acquired title from McCullough. Thus we have no difficulty in ascertaining what portion of land passed to Seybold in this conveyance, notwithstanding the fact that there was a misdescription contained in the deed to Seybold. That this is the proper construction to be placed upon this deed is borne out by the rule announced in the case of Bank v. Stuart, 93 Va. 447, 25 S. E. 543, in which the court, among other things, said:

"It is one of the maxims of the law that a false description does not render a deed or other writing inoperative, if, after rejecting so much of the description as is false, there remains a sufficient description to ascertain with legal certainty the subject-matter to which the instrument applies. This rule of construction is said to be derived from the civil law. Falsa demonstratio non nocet cum de corpore constat. 2 Minor's Inst. 1063 (4th Ed.); 1 Greenleaf on Ev. § 301; 2 Taylor on Ev. § 1218; Wootton v. Redd, 53 Va. 196, 209; Preston & Massey v. Heiskell, 73 Va. 48, 59, 60; Broom's Legal Maxims, 629 (7th Ed.).

"In the case of Loomis v. Jackson, 19 Johns. (N. Y.) 449, a lot was described in the deed by a wrong number, yet, being also described by fixed and known objects, it was held that the number of the lot might be rejected.

"In Sharp v. Thompson, 100 Ill. 447, 39 Am. Rep. 61, the mortgage under consideration described the several lots conveyed by numbers with the additional clause 'being all block twenty-five.' Block 25 did not contain the lot mentioned in the deed, but they were in another block. It appearing, however, that it was the 'intention of the mortgagor to mortgage the block in which he resided and that he resided in block 25. it was held that block 25 was, and the lots named were not, subject to the mortgage.

"In Worthington v. Hylyer, 4 Mass. 196, the description in the deed was 'all that my farm of land in Washington on which I now dwell, being lot No. seventeen in the front division of lands there, containing one hundred acres, with my dwelling house thereon standing, bounding west on the land of Joseph Chappel, northerly by a pond, easterly by lot number eighteen and southerly by lot number nineteen, having a highway through it.' The limits of the lots were correctly described, but the farm on which the grantor lived was not No. 17, but a different parcel of land. The court rejected the false description, because the description was sufficiently definite without it, and if it were considered an essential part of the description the effect would render the deed inoperative. Many instances of the application of this rule are cited in the text-books and decisions. 2 Minor's Inst. p. 1063; 1 Greenleaf on Ev. § 301; Broom's Legal Maxims, p. 629; 2 Devlin on Deeds, §§ 1016, 1038; Wootton v. Redd, 53 Va. 196."

Applying this rule and rejecting the words "surveyed off the north side," we have almost the identical description contained in the McCullough, Brown, and Burnett deeds; and, further, the contention on the part of counsel for the defendants as to the intent of the parties is flatly contradicted by the terms of the deed itself; for the deed

further states that the land she undertook to convey to Seybold was—in the language of the deed—"to be surveyed off that portion of the above tract which yet remains to me," and the title to which reference is made, being the title which she had acquired from McCullough. Therefore, construing the deed from Mrs. Aultman to Seybold in connection with the deed from McCullough to Mrs. Aultman, there is not the slightest difficulty in ascertaining the intent of the parties or the true location of the land in controversy.

There was a subsequent deed from the heir at law (daughter) of Mrs. Aultman and her husband (Josiah Aultman) to Seybold. The effect of this conveyance was to give Seybold title to the west half of this tract to which Mrs. Aultman, as above stated, had taken title from McCullough; but we do not think that this deed need be considered as at all necessary to establish the title of the plaintiff. This was clearly the opinion of counsel for the plaintiff in the court below. In referring to this deed he said:

"Now, if the court please, we might just as well state frankly to the court that that is our contention, and has been all the time, and is now, that we have whatever title Mrs. Aultman had in that land. This deed is introduced for the purpose of showing that after her death, if there was any remainder remaining in her, it was conveyed to Mr. Seybold and whatever title she had is his title. We don't claim anything but what was vested in Mrs. Aultman."

The court then stated that it was admissible for descriptive purposes and as a quitclaim of any title which Mrs. Aultman may have had.

[8] However, it is contended that to run by the lines as indicated on the official plat, the plaintiff would secure judgment for a greater number of acres than Mrs. Aultman undertook to convey to him. As we have said, Mrs. Aultman simply conveyed the interest she had in this particular tract of land. It is a matter of common knowledge that where lands are surveyed under old patents, like the one in question, the survey not infrequently shows a greater number of acres than the amount shown by the patent. This is due to the fact that in the earlier days land was not as valuable as now, and surveys at that time were not made with as much accuracy as at present. It should also be remembered that, notwithstanding the fact that counsel contend that the deed from Mrs. Aultman to Seybold was void for want of certainty, yet no objection was made to its introduction at the time it was offered in evidence. However, if the contention of counsel for the defendants be true that the deed from Mrs. Aultman to the plaintiff only conveyed 500 acres, it should be remembered that the deed from her husband and daughter, Nora Aultman, undoubtedly conveyed any remaining interest she may have had in this tract. The contention that the plaintiff's deed from Mrs. Aultman is void for want of certainty is untenable and cannot be maintained on principle. This being true, she certainly owned a one-half interest in the Vanzandt tract, and, being the owner of such portion, she had the right to convey it to the plaintiff. The fact that this one-half interest contains more or less than the number of acres described in her conveyance cannot in the slightest degree affect the title of the plaintiff nor her right to

convey the same in the first instance. She undertook to convey her interest, and by such conveyance any interest she may have owned passed to the plaintiff, be it great or small. That her interest was capable of being located is shown by the fact that the official surveyor had no difficulty in locating the same on the map, as an examination of the map prepared and introduced in evidence at the trial in the court below will show.

The plaintiff having shown title to and located the land claimed in the declaration, it necessarily follows that the court below acted properly in granting plaintiff's instruction No. 1, which is in the following language:

"The court instructs the jury to find for the plaintiff the possession of, and that he has the fee-simple title to, the western half of the tract of land described in the first count of his original and amended declaration, designated on the map of Surveyor Ellsworth Wilson introduced in evidence, by the red and black lines, and by the figures 1, 2, 3, 4, 5, and 6, which western half is designated on said map by the points marked 1, 2, 3, 4, 7, 8, and 1, and one cent damages."

It appears that this case was fairly and impartially tried in the court below, and that the defendants were given ample opportunity to establish the contention that they had acquired title to the locus in quo by possession under color of title; but they failed to establish this fact. Under the circumstances, we think that the errors assigned are without merit and that substantial justice has been had.

An examination of the authorities relied upon by counsel for the defendants as to the various points at issue discloses the fact that they do not apply to the case at bar.

The judgment of the lower court is therefore affirmed.

Affirmed.

McDOWELL, District Judge, dissents.