### JARVIS v. JOHNSON et al.

(District Court, N. D. West Virginia. October 2, 1913.)

1. Taxation (§ 848*)—Forfeiture for Nonpayment of Taxes—West Virginia Statute.

Under the decisions of the Supreme Court of Appeals of West Virginia, land is not forfeited to the state if the owner for five successive years fails to cause himself to be charged with the taxes and pay the same, where during such years it was assessed to the record owner's grantors and the taxes were paid.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1664; Dec. Dig. § 848.*]

2. Evidence (§ 383*)—Recitals in Ancient Deeds—Presumption of Correctness.

Recitals in a deed 70 years old purporting to have been executed by an attorney in fact of the record owner of the land, setting forth the grantor's authority, will be assumed to be correct so far as necessary to sustain the grantee's title as against a stranger.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1660–1677; Dec. Dig. § 383.*]

3. Adverse Possession (§ 103*) — Extent of Possession — Overlapping Grants—Construction of Statute—"Land in Controversy."

Code W. Va. 1906, c. 90, § 19 (section 3354), provides that "in a controversy affecting land when a person claiming under a patent, deed or other writing shall enter upon and take possession of any part of the land in controversy under such patent, deed or writing for which some other person has the better title such adversary possession * * * shall be taken and held to extend to the boundaries embraced or included by such patent, * * * unless the person having the better title shall have actual possession of some part of the land embraced by such patent," etc. Held, that under such statute in order to give the holder of the junior of two grants, the boundaries of which overlap, title by adverse possession as against the senior grantee, he must have been in the actual possession for the required length of time of some part of the interlock, which is the "land in controversy" within the meaning of the statute.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 590–594; Dec. Dig. § 103.*]

In Equity. Suit by Claude S. Jarvis against Robert Johnson and another. On final hearing. Decree for complainant.

W. B. & E. L. Maxwell, of Elkins, W. Va., and Arthur S. Dayton and F. O. Blue, both of Philippi, W. Va., for plaintiff.

Talbott & Hoover, of Elkins, W. Va., and Chas. M. Murphy, of Philippi, W. Va., for defendants.

DAYTON, District Judge. Plaintiff claims, through successive conveyances, lot 56 of land patented to Claiborne in 1797. The contesting defendants claim, by successive conveyances, a 470-acre tract patented to Levi and Wm. Johnson on July 1, 1850. These lands overlap to the extent that defendant Harris claims 64.35 acres and defendant Johnson 126.45 acres as covered by their junior patent, included and embraced in plaintiff's lot 56, older patent. When sawmill contractors went, under plaintiff, upon the disputed land to cut the timber, defendant Johnson caused the arrest of four of the men employed for this purpose. The plaintiff thereupon brought this suit to enjoin interference on the part of defendants Johnson and Harris with the timber cutting and to remove the cloud of their title from his land. The defendants have for defense set up (a) forfeiture of plaintiff's title for nonpayment of taxes for five successive years; (b) failure on the part of plaintiff to connect his title with the commonwealth so as to make out the older title; (c) open, notorious, exclusive, hostile, and adverse possession under their junior patent for longer period than required by statute; and (d) lack of such possession by plaintiff or his vendors, as to warrant equity to take jurisdiction.

[1] Touching the forfeiture asserted, it is sought to be shown by the certificate of the county clerk (by statute made prima facie evidence) to the effect that for the years 1894, 1895, 1896, 1897, and 1898 the only lands assessed to George M. Whitescarver, plaintiff's grantor, in Barbour county where the disputed lands lie, either to him personally or to him jointly with others, is for the years 1894, 1895, and 1896 "320 acres part of lot No. 50." A further certificate of the clerk, however, shows that for these years 1894, 1895, 1896, 1897, and 1898 Bunker, Allen, and Morrall had been assessed with 315 acres, 420 acres, and 140 acres in Glade district, Barbour county, where the disputed land lies. By reference to the deeds to Whitescarver, it will be perceived that he bought in 1890 from the heirs and devisees of Bunker and Allen the unsold, undivided interests in this Claiborne patent of 1,000 acres; that by reason of conflict in title, compromise between Morrall and Bunker and Allen had been effected, whereby Morrall had an undivided half interest in 420 acres of the land which also in May, 1890, his trustee, Woods, had conveyed to Whitescarver; that for the year 1899 Whitescarver is charged with taxes upon a tract of 875 acres in the same county and district noted on the book as "from W. B. Allen &c & consolidated." It would seem fairly clear from this that, because the several undivided interests acquired by Whitescarver from these three different sources were not run out and consolidated until 1900, they were in these prior years allowed to be assessed in the names of these former owners. This insured payment of the taxes to the state and county and was sufficient to prevent forfeiture of the land to the state under recent decisions of the Supreme

Court of Appeals. State v. West Branch Lumber Co., 64 W. Va. 673, 63 S. E. 372.

[2] As to the second defense, that the plaintiff has failed to connect his title with the Claiborne patent, I regard it as not well taken. The boundaries of this patent have been fairly well made out by its calls and corners and by reason of adjoining tracts and parcels sold from it calling for its lines. It is shown that in the more than 150 years since the patent issued the land has been incorporated, in whole or in part, in the four counties of Monongalia, Preston, Randolph, and Barbour. While the land was in Preston county and after it had been conveyed by Claiborne, the patentee, to John Hopkins and George Pickett, Wm. McCoy, attorney in fact, by deed dated April 18, 1835, conveyed it to Israel Baldwin. No power of attorney to McCoy is shown; it is claimed to have been destroyed by a later fire that burned the courthouse of Preston county. Be this as it may, McCoy's deed as attorney in fact many years antedates defendant's patent and claim of title. It sets forth McCoy's authority to convey on behalf of Hopkins & Pickett; it is an ancient deed, and as such its recitals will be assumed to be correct so far as necessary to show Baldwin's right to the Claiborne land as against a stranger. This brings us to the question of possession which has given rise to very positive disagreement between counsel as to the law governing. There is little disagreement as to the facts. This remainder of the Claiborne 1,000 acres now owned by plaintiff has never been cleared or improved. It was allowed to remain in a state of nature until a very short time before the bringing of this suit, when plaintiff, through Mason and Dennison, undertook to cut and manufacture the timber on it. When they sought to extend their operations over the line of the lap, their men were arrested and this injunction was sued out. On the other hand, while the defendants, Johnson and Harris, have improved parts of the 470-acre junior patent and have been in possession of such improvements for a period excluding the statutory period of ten years—of some parts thereof, in fact for 40 years—they have never taken actual manual possession of any part of the ground embraced in the interlock. The nearest approach to doing so was by defendant Johnson, who strung a couple of strands of wire around it or part of it through the woods some four or five years before suit was brought.

[3] The plaintiff claims that by reason of his old patent and deeds antedating those of defendants a half century he has the better title, and in consequence and by reason thereof the law clothes him with a constructive possession entitling him to hold to the limit of the boundaries called for by his paper title; that he is by law in possession of every foot of the ground so bounded until he is ousted by a junior claimant actually taking possession of some part of his land covered by these boundaries and maintaining such possession openly, notoriously, continuously, and adversely for ten consecutive years under our statute; that until such holding on the part of the junior claimant has matured he, as the better owner in constructive possession, may at any time enter upon his land, take possession of any part of it, for any purpose of enjoyment of it, and maintain his suit in equity to

remove the cloud upon his title arising from any unmatured junior claim of right or title to it or any part of it.

To illustrate this contention by diagram:

If plaintiff has the older title to A B D C and the defendants have junior title to W X Y Z, such defendants can make no claim, it is contended, as against plaintiff's constructive possession, to the interlook embraced in A X Y B by holding possession of W Z B A or any part of it for *any* number of years, but must actually enter upon A X Y B and hold it or some part of it openly, notoriously, exclusively, and adversely for ten years under title or color thereof before he can deny plaintiff's constructive possession thereof by reason of his older and better title. I am thus careful in illustrating the situation because, on the other hand, the defendants just as earnestly contend that when they procured their junior patent and went into possession of it anywhere within its limits, say inside of W Z B A, they went into constructive possession of all the land embraced in their calls including the interlock A X Y B, unless the holder of the older title was in possession of the interlock or some part of it, and that when they held in actual possession any part of the land embraced in the boundaries of their junior patent for the statutory period of ten years, they became not only vested with possession but complete and perfect title of and to the whole land included in and bounded thereby, including the interlock, as against the holder of the older title and the world. They base this contention upon an act of the Legislature of West Virginia approved March 10, 1879 (chapter 61, Acts 1879, p. 91) amending section 19, c. 90, Code 1868, which has now been incorporated into, as section 19, c. 90, or section 3354, of the present Code of the state (1906), and reads as follows:

"In a controversy affecting land, when a person claiming under a patent, deed or other writing shall enter upon and take possession of any part of the land in controversy under such patent, deed or other writing, for which some other person has the better title, such adversary possession under such patent, deed or other writing, shall be taken and held to extend to the boundaries embraced or included by such patent, deed or other writing unless the person having the better title shall have actual possession of some part of the land embraced by such patent, deed or other writing."

This section 19, c. 90, Code of 1868, taken from the Virginia Code 1860, prior to this amendment, reads:

"In a controversy affecting real estate, possession of a part shall not be construed as possession of the whole, when an actual adverse possession can be proved."

Defendant's counsel cite in support of their contention under this statute the cases of Taylor v. Burnsides, 1 Grat. (42 Va.) 165–192; Adams v. Alkire, 20 W. Va. 480; Core v. Faupel, 24 W. Va. 238; Swann v. Young, 36 W. Va. 57, 14 S. E. 426; Maxwell v. Cunningham, 50 W. Va. 298, 40 S. E. 499; Garrett v. Ramsey, 26 W. Va. 345; and State v. Harman, 57 W. Va. 477, 50 S. E. 828.

An examination of these cases discloses that in none of them do the facts present the exact question presented here. Garrett v. Ramsey comes the nearest. There an interlock was shown, but adverse possession *within the interlock* was claimed by the junior title. What construction should be placed upon this statute in its use of the words "when a person claiming under a patent * * * shall enter upon and take possession *of any part of the land in controversy*," etc.? Using the illustration again, what land is in controversy, W Z Y X, or A B Y X, subject to the terms of this statute? Certainly no one disputes the junior patentee's right to W Z B A. How by possession of his undisputed holdings can he obtain possession of A B Y X as against the holder of the older and better title thereof? How could such possession be hostile? Above all, how could it be open and notorious? It is common experience that local identity of land on the ground can in most cases only be determined by actual survey. As a result, the holding by the junior claimant of the undisputed part of his patent would not ordinarily, except by actual survey of his lines, disclose that such holding was meant to cover an interlock. Would not such construction of the statute require every owner of an old and settled title to survey out, in most cases, all the claims and holdings of his adjoining owners to see if any of them overlapped his land whereby he might be by such holding deprived of parts of his land? And in case he found his neighbors' lines extended so over his own as to create an overlap or interlock, would he not be driven to one of two things in order to save his boundary intact—sue or proceed to clear and take pedis possessio of some part of each and every such overlap that he might find? Long and earnest study of this statute and of the principles governing adverse possession of real estate has led me to the conclusion that no such construction can be placed upon the terms of this statute and that the contention of the plaintiff in this case is the true one, to the effect that there can be no adverse possession of the interlock except by taking pedis possessio of such interlock or part thereof by the junior claimant.

In this position, as I read them, I am fully sustained by the principles laid down by the Circuit Court of Appeals for this circuit in Davis v. Seybold, 195 Fed. 402, 115 C. C. A. 304, and by the Supreme Court of Appeals of West Virginia in Camden v. Lumber Co., 59 W. Va. 148, 53 S. E. 409, and the very recent case of Chilton v. White, handed

down in May last and reported in 78 S. E. 1048. In the Davis-Seybold Case it was held that where one had surrounded by purchase a tract of land owned by Seybold with all the adjoining tracts, had then had all the tracts, including Seybold's, run into one boundary, by deed had conveyed the boundary as a whole, and the purchaser had taken possession for ten years or more of the adjoining tracts but not of Seybold's in the center, such holding was not adverse holding of Seybold's tract. In the Camden-Lumber Co. Case, speaking of the one having the older and better title, Poffenbarger, Judge, at page 155 of 59 W. Va., page 412 of 53 S. E., says:

"Such owner * * * need never to have had the actual possession. It suffices for him to show title in himself, because title gives a right of entry, a right to the possession, a right against which a mere trespasser can make no defense. Duff v. Good, 24 W. Va. 682; Garrett v. Ramsey, 26 W. Va. 345; Billingsley v. Stutler, 52 W. Va. 92 [43 S. E. 96]; Olinger v. Shepherd, 12 Grat. (53 Va.) 462."

Again at page 157 of 59 W. Va., page 413 of 53 S. E., he says:

"Thus, in the case of an interlock, if the owner of the elder title be in the actual possession of a part of the land covered by his patent, but outside of the interlock, and the holder of the junior patent be in possession of a part of the land covered by his patent, but outside of the interlock, the actual possession of the holder of the better title is deemed to extend to, and cover, every part of the interlock."

And he points out that the only modification of this common-law rule is the one made by Garrett v. Ramsey, supra, to the effect that, if the junior patentee takes possession of a part of the interlock and holds it adversely for the required period, his holdings will include the whole of the interlock if his patent calls for it, provided in the meantime the holder of the older title has been in actual possession of no part of the interlock. If he has been in such possession, then the junior claimant takes only such part of the interlock as he has held in actual possession.

Again it is said in this case at page 158 of 59 W. Va., page 413 of 53 S. E.:

"In ejectment law, however, a possession for less than ten years is utterly worthless and unavailing as a basis of recovery. It must go down before a good paper title."

And at page 159 of 59 W. Va., page 414 of 53 S. E.:

"There seems to vest a perfect paper title in the defendant, and such title, without actual possession, puts every foot of land within the boundaries fixed by the paper title constructively in the possession of the owner. This possession cannot be broken except by the possession of some other person within those bounds."

The Chilton-White Case reaffirms and re-enforces the principles set forth above, especially as to the constructive possession vested in the holder of the better title against which never runs a constructive possession in favor of the junior claimant unless he has had in actual adverse possession some part of the land in controversy. It would seem clear from these two cases, the latest utterances of the Supreme Court of Appeals of the state upon the subject, that the true owner is *con-*

*structively* always in possession of his land until ousted by a ten years' adverse holding by another and this by reason of his older and better title; that at any time he may protect the timber by injunction from the trespass of another, though that other may have a younger and worthless title to the land; that he can at any time before such bad title matures by adverse possession assume actual possession of his land as in this case and bring his suit in equity to remove the cloud of the worthless title therefrom.

Let there be decree for the plaintiff to this end entered in this case.