PARRISH v. FOREMAN–BLADES LUMBER CO. et al.

(Circuit Court of Appeals, Fourth Circuit. February 21, 1914. On Rehearing, November 19, 1914.)

No. 1227.

1. ADVERSE POSSESSION (§ 101*)—CONSTRUCTIVE POSSESSION.

The holder of the older and better title is to be regarded as having constructive possession, and the holder of the junior and inferior title, that may overlap it, cannot hold adversely until he has entered into the actual boundary claimed by the older and better title and acquired adverse possession thereof or of some part of it; it being insufficient that he enters into possession of land outside the boundaries of the land in controversy, though within the limits of his paper color of title.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 575–589; Dec. Dig. § 101.*]

2. ADVERSE POSSESSION (§ 53*)—COLOR OF TITLE—CONTINUITY OF POSSESSION.

Where a claimant under color of title takes possession and holds for a time adversely, but vacates before the statutory period expires, the moment such vacation occurs the owner, by reason of his legal title, will be regarded as in constructive possession, and the adverse possession of the wrongdoer is at an end.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 266–270; Dec. Dig. § 53.*]

3. ADVERSE POSSESSION (§ 112*)—BURDEN OF PROOF.

The burden is on him who asserts adverse possession to sustain every element involved therein by a preponderance of the proof, and, if he fails with reference to any element, it is the court's duty to charge that there is no sufficient evidence of adverse title.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 651, 653, 654, 657–659, 661–663, 665, 666; Dec. Dig. § 112.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. ADVERSE POSSESSION (§ 14*)—CONSTRUCTIVE POSSESSION.

No length of constructive possession will ripen a defective title into a valid one, but the possession for that purpose must be actual and continuous.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 77–81; Dec. Dig. § 14.*]

5. ADVERSE POSSESSION (§ 14*)—POSSESSION OF TRUE OWNER.

Where there is no actual possession of land, the law carries the possession to the real owner.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 77–81; Dec. Dig. § 14.*]

6. ADVERSE POSSESSION (§ 44*)—COLOR OF TITLE.

Possession of land under color of title must be taken by the claimant himself, his servants or tenants, and by him or them continued for the statutory period, and is not established by proof of a single entry on the land against which an injunction has been promptly secured.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 226–231; Dec. Dig. § 44.*]

In Error to the District Court of the United States for the Eastern District of North Carolina, at Elizabeth City; Henry G. Connor, Judge.

Action by T. K. Parrish against the Foreman-Blades Lumber Company and others. Judgment for defendants, and plaintiff brings error. Reversed.

George W. Ward, of Elizabeth City, N. C., and J. Crawford Biggs, of Raleigh, N. C. (Ward & Thompson, of Elizabeth City, N. C., and Winston & Biggs, of Raleigh, N. C., on the brief), for plaintiff in error.

A. D. MacLean, of Washington, N. C., and W. D. Pruden, of Edenton, N. C. (James H. Pou, of Raleigh, N. C., and J. B. Leigh, of Elizabeth City, N. C., on the brief), for defendants in error.

Before PRITCHARD and WOODS, Circuit Judges, and DAYTON, District Judge.

DAYTON, District Judge. The plaintiff in error, also plaintiff below, claimed, in this action, that, as tenant in common with the defendants, he was the owner of an undivided two-thirds interest in a tract of 3,306 acres of land, a part of the Josiah White tract, situate in Pasquotank county, N. C. He charged defendants with entering thereon, unlawfully cutting timber therefrom, and refusing to account to him therefor, or any part thereof, wherefore he had secured an injunction from the court below, inhibiting such timber cutting until this action could be instituted at law and the title inter partes could be determined therein. Replying to this complaint, defendants substantially pleaded adverse possession, under color of title, for 3, 7, or 20 years, according to whichever term of limitation, by law, might be necessary to bar plaintiff's right of entry. A trial had in the court below resulted in a verdict and judgment for the defendants.

Without setting forth the long and complicated chain whereby

plaintiff traced his title back to the commonwealth's grant to Hamilton, it is sufficient to say that on August 5, 1857, Skinner and Warren owned a two thirds undivided interest and one Cannon the other undivided third interest in this land. On that date they executed their deeds, one to the other, whereby they constituted a line running "south 21½ west from Temple's corner" as a division one between them. Numerous subsequent conveyances and judicial proceedings introduced in evidence substantially established the fact that this paper title, at the time of the institution of this suit, was vested, so far as the land in controversy lying west of this division line was concerned, two undivided thirds in plaintiff and the remaining third in defendants. But, while this is true, it also appears to be true that, after the division line was established, Warren and Cannon undertook, by deed of date September 16, 1866, to convey land lying west of this line, including the land in controversy, to Underwood and wife, and White, on his part, undertook to exclude Cannon and claim the whole of the tract, lying west of the line, in severalty, and in subsequent conveyances by White and his grantees (including three decrees in equity causes relating to his title) the whole of the tract is sought to be conveyed and transferred and not an undivided interest. In effect this gives rise to defendant's contention that, on both sides, the parties in interest, by their acts and deeds, undertook to and did oust each other as tenants in common as to the land in controversy and practically acquired paper colors of title, and the one, so acquired by them, by seven years' adverse possession, has barred plaintiff's right in their favor. On the other hand, it is very earnestly insisted by plaintiff that the general rule "that where one of the several tenants in common executes a deed purporting to convey the entire premises to one who enters in possession thereunder, claiming title or recording his conveyance, this will constitute a disseisin of his cotenants, and after the expiration of the statutory period of limitations their right to the land will be barred," is not upheld in North Carolina, but the contrary, and therefore, being tenants in common still, nothing short of 20 years' adverse possession could bar plaintiff's right. A number of North Carolina cases are cited to sustain this contention. In our view of the case this question becomes immaterial. It is conceded that only color of title could be secured by any such attempted disseisin, and that adverse possession must be held for at least seven years before such color could ripen into perfect title.

[1] Such possession must be adverse, actual, visible, exclusive, and continuous. The holder of the older and better title is always to be regarded as having constructive possession, and the holder of the junior and inferior title, that may overlap it, cannot hold adversely until he has entered upon the actual boundary claimed by the older and better title and acquired adverse possession of it or of some part of it. In other words, he cannot, by entry into and possession of land outside of the land in controversy, although it be within the limits of his paper color of title, overcome the superior right of the holder of the better title by reason of the constructive possession vested by law in the latter.

217 F.—22

[2] In case, too, the claimant under color of title does take possession and hold for a time adversely, but vacates before the statutory period expires, that moment the owner, by reason of his legal title, will be regarded as in the constructive possession and the adverse possession of the wrongdoer at an end.

[3] It follows that the evidence of adverse possession must be preponderant, and that the burden is upon him who asserts it to sustain every element involved in it, and, failing in proof of any one of these elements necessary to constitute it, it is the duty of the court to instruct the jury that there is no sufficient evidence to allow him to hold the land. 1 Cyc. 981 et seq. and 1143. Davis v. Seybold (C. C. A. 4th Ct.) 195 Fed. 402, 115 C. C. A. 304; Jarvis v. Johnson (D. C.) 208 Fed. 353.

[4] As said by the Supreme Court of North Carolina in Williams v. Wallace, 78 N. C. 308 (side page 354):

(1) No length of constructive possession will ripen a defective title to land into a good one; the possession must be actual and continuous.

[5] (2) Where there is no actual possession of land shown, the law carries the possession to the real owner.

[6] (3) A possession of land under color of title must be taken by a man himself, his servants or tenants, and by him or them continued for seven years together; therefore, where, in an action to recover land, it appeared that the plaintiff under color of title had made occasional entries upon the land at long intervals for the purpose at one time of cutting timber, at another of making bricks, &c., held, that the plaintiff was not entitled to recover.

Governed by these well-settled principles of law, an examination of all the evidence introduced for the purpose of establishing adverse possession, under color of title in the defendants, of the land actually in controversy in this case, has convinced us that it was wholly insufficient for the purpose, but, on the contrary, tended to refute the claim that such possession had been attempted to be taken within the boundaries of the land lying west of the division line to which this controversy alone related, except upon one occasion, when an injunction was promptly secured against it. The learned trial judge, therefore, erred in refusing the plaintiff's motion for an instructed verdict in his favor.

The judgment of the court below will be reversed, and the case remanded, with instructions to set aside the verdict and award a new trial.

Reversed.

## On Rehearing.

PRITCHARD, Circuit Judge. This case was heard and decided by this court at the February term, 1914, at which time the court filed an opinion, reversing the judgment of the lower court, in which it was held that there was not sufficient evidence offered in that court bearing upon the question as to the possession of the defendants to justify the jury in finding in favor of the defendants, and a reversal was directed, and judgment entered accordingly.

On June 13, 1914, a rehearing was granted upon a petition of de-

fendants in error, and the case was reargued at this term. After due consideration of the same, we are of opinion that the conclusion reached by this court in the first instance as respects this point was correct.

Therefore we adhere to our former decision reversing the judgment of the lower court.